## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **EDHI MUHAMMAD,** ) | |
| ) | |
| **Plaintiff,** ) | **Civil Action No.: 08-457 (ESH)** |
| ) | |
| **v.** ) | |
| ) | |
| **U.S. CUSTOMS & BORDER PROTECTION,** ) | |
| ) | |
| ) | |
| **Defendant.** ) | |
| ) | |
| ) | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, United States Customs & Border Protection ("CBP"), seeks an order, pursuant to Federal Rule of Civil Procedure 56, granting defendant summary judgment on the grounds that no genuine issue of material fact exists and defendant is entitled to judgment as a matter of law.

In support of this motion, defendant respectfully submits the attached statement of material facts as to which there is no genuine dispute, a memorandum of points and authorities with exhibits, and a proposed order.

Respectfully submitted,


     /s/ Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


     /s/ Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney


     /s/ Michelle N. Johnson
MICHELLE N. JOHNSON, D.C. BAR # 491910
Assistant United States Attorney

United States Attorney's Office
Civil Division
555 4th Street, N.W. – Room E4212
Washington, D.C. 20530
(202) 514-7139

COUNSEL FOR DEFENDANT

Of Counsel:

Brooks Thomas
Assistant Chief Counsel
Customs & Border Protection
Atlanta, Georgia

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

EDHI MUHAMMAD,                                    )
                                                 )
                    Plaintiff,                   )        Civil Action No.: 08-457 (ESH)
                                                 )
        v.                                       )
                                                 )
U.S. CUSTOMS & BORDER PROTECTION,                )
                                                 )
                                                 )
                    Defendant.                   )
                                                 )

---

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant, United States Customs & Border Protection ("CBP"), submits this

memorandum of law in support of its motion for summary judgment.  Plaintiff, Edhi Muhammad

("plaintiff"), brings this action pursuant to the Freedom of Information Act, 5 U.S.C. § 552 et

seq., ("FOIA") concerning a FOIA request submitted on his behalf.  Summary judgment is

required because the agency has conducted a proper search for records, has released all

segregable non-exempt records to plaintiff, and has properly withheld any non-exempt records

pursuant to the applicable FOIA exemptions.  Accordingly, defendant requests that the Court

enter judgment in favor of defendant and dismiss plaintiff's complaint with prejudice.

## I.    FACTUAL BACKGROUND

By letter dated November 29, 2007, Mr. Peter S. Herrick, an attorney acting on behalf of

plaintiff Edhi Muhammad, filed a FOIA request with the CBP Fines, Penalties and Forfeiture

Office ("FP&F") in Atlanta Georgia.  Declaration of Shari Suzuki ("Suzuki Decl.") ¶ 6; Suzuki

Decl. Ex. B (FOIA Request dated November 29, 2007).  This FOIA request sought records

pertaining to the seizure of a United Commercial Bank Cashier's Check in the amount of

$58,738.80 from plaintiff's bank account. Complaint ¶ 5; Declaration of Shari Suzuki dated

April 30, 2008 ("Suzuki Decl."). This request sought, in general, all information relied upon by

Customs for the seizure of a the cashier's check (#712300336). Suzuki Decl. ¶ 6. Among other

information, the request sought "copies of any documents, photographs, copies and/or seizure

reports prepared and/or taken during the Customs investigations in the referenced case." Suzuki

Decl., Ex. B, at 1. Plaintiff sought expedited processing of his request, indicating that there was

a "compelling need for the records upon knowledge and belief based on the ongoing seizure

case." Id. at 2.

In a letter dated December 5, 2007, the FP&F FOIA processor informed plaintiff that,

pursuant to current FOIA policy, plaintiff's FOIA request would be forwarded to CBP's

centralized FOIA division office located in Washington, D.C. Suzuki Decl. ¶ 7; Suzuki Decl.,

Ex. C (Letter dated December 5, 2007). Thereafter, by letter dated January 25, 2008, the

CBP/FOIA division both acknowledged receipt of plaintiff's request and informed plaintiff that a

search of CBP's database had produced eighteen pages responsive to plaintiff's request. Suzuki

Decl. ¶ 9; Suzuki Decl. Ex. D (Letter dated January 25, 2008).[1] Plaintiff was informed that

certain portions of the documents were exempt from disclosure pursuant to certain FOIA

---

[1]By letter dated January 2, 2008, having not yet received a response to his FOIA request,
plaintiff submitted an appeal regarding the non-response. Suzuki Decl. ¶ 8. This letter was
received by the FP&F Office but was not received by the FOIA Appeals, Policy and Litigation
("FAPL") Branch, which is the office within the Department of Homeland Security
("DHS")/CBP that is charged with the responsibility of managing and responding to
administrative appeals of initial responses to FOIA requests. Suzuki Decl. ¶¶ 1, 8. After the
filing of plaintiff's complaint in which the letter was mentioned, the FAPL Branch obtained a
copy of this letter from the FP&F office.

exemptions.  Id.  Specifically, of the eighteen responsive pages, seven (7) pages were disclosed in full and eleven (11) pages were disclosed with information redacted.  Suzuki Decl. ¶ 9. Information was redacted under the following FOIA Exemptions: 2, 6, 7(C) and 7(E).  Id.; see also Suzuki Decl., Ex. D.

In conducting a search for records responsive to plaintiff's FOIA request, the CBP used methods that were reasonably expected to find the information requested.  Suzuki Decl. ¶ 16. The relevant records system that was searched was the SEACATS (Seized Asset and Case Tracking System) module of the Treasury Enforcement Communications System (TECS).  Id. TECS records constitute a CBP system of investigatory files that contain data on violators and possible violators of laws enforced by CBP.  Id.  SEACATS information pertains to tracking forfeited or seized property, penalties, and liquidated damages from case initiation to final resolution.  Id.  CBP also reviewed the case filed maintained by the FP&F Office in Atlanta.  Id.

Plaintiff filed an appeal of the agency's response by letter dated February 4, 2008.  Suzuki Decl., Ex. E (Letter dated February 4, 2008).  In this appeal, plaintiff contended that the agency had failed to construe the FOIA request "liberally based on its decision to confine the release of all requested information under broad exemptions and refusing to release other relevant information with no legal justification."  Id.[2]  By letter dated February 5, 2008, the FOIA Appeals, Policy and Litigation ("FAPL") Branch acknowledged receipt of plaintiff's appeal. Suzuki Decl., Ex. F (Letter dated February 5, 2008).

Thereafter, the FAPL Branch responded to plaintiff's appeal by letter dated March 4,

_____

[2]Plaintiff did not appeal the denial of his request for expedited processing.  Suzuki Decl., Ex. E.

2008, affirming the initial decision of CBP.  Suzuki Decl. ¶ 12; Ex. G (Letter dated March 4, 2008).  Specifically, the FAPL Branch found that of the eleven pages on which information had been redacted, such redactions had been properly made pursuant to FOIA Exemptions 2, 6, 7(C) and &(E).  Suzuki Decl., Ex. G, at 2.[3]  Specifically, the FAPL Branch found that Exemption 2 had been properly invoked to withhold information found on eight (8) pages that concerned trivial matters, such as alpha-numeric case file numbers and agency routing information that assists the agency in the organization of its records, or alternatively, internal information of a more substantial nature pertaining to law enforcement procedures that could risk circumvention of a legal requirement.  Id. at 5; Suzuki Decl. ¶ 12.  Concerning Exemptions 6 and 7(C), the FAPL Branch concluded that these exemptions had been properly invoked to withhold the names and signatures of CBP officers and other third parties involved in the seizure case.  Id. at 6-8; Suzuki Decl. ¶ 12.  Finally, the agency found that Exemption 7(E) had been properly invoked to redact information compiled for law enforcement purposes pertaining to techniques and procedures for law enforcement investigations or prosecutions as the information was related to CBP's law enforcement mandate.  Id. at 9; Suzuki Decl. ¶ 12.[4]

Plaintiff submitted a letter dated March 6, 2008, supplementing his prior FOIA appeal, in

---

[3]Released copies of partially redacted documents contain the coded categories of FOIA exemptions invoked to detail the nature of the information withheld.  Suzuki Decl. ¶ 20.  Thus, for example, if "b6" appears on a document, this refers to FOIA Exemption (b)(6).  Id.

[4]The March 4th response letter also informed plaintiff that several other records were contained in the seizure case file in this matter that were not CBP records.  Suzuki Decl., Ex. G, at 2; Suzuki Decl. ¶ 12.  Plaintiff was informed that those records had been referred to the appropriate agency within DHS for a direct response to plaintiff's request.  Id.  Twelve pages were referred to the United States Immigration and Customs Enforcement ("ICE"), another component agency within the DHS.  Suzuki Decl. ¶ 12.  ICE furnished a direct response to plaintiff, which plaintiff has not appealed.  Id.

which he claimed that three pages provided to him by the Office of the Associate Chief Counsel
("ACC") in Atlanta had not been previously disclosed in response to his initial FOIA request or
appeal. Suzuki Decl., Ex. H (Letter dated March 6, 2008). The FAPL contacted the FP&F
Office and ACC regarding the three pages provided to plaintiff and learned that ACC, in
discussions with plaintiff's counsel regarding the underlying FP&F case, had provided plaintiff's
counsel with these pages based on plaintiff's counsel's representation that he was unaware of the
plaintiff's decision to withdraw his election of court proceedings in order to pursue
administrative proceedings. Suzuki Decl. ¶ 14. One (1) of the three (3) pages had already been
released in full as part of the response to plaintiff's initial FOIA request and was reviewed as part
of the appeal response. Id. The remaining two (2) pages were not in the file sent by the FP&F
office to the FOIA division for processing of the initial FOIA response and, similarly, were not
contained in the file reviewed on appeal. Id. It appears because of the relatively short period in
which plaintiff decided to pursue administrative proceedings in lieu of his initial decision to
pursue court proceedings that an administrative oversight/error occurred. Id. The administrative
assistant copying the file and seeing the CAFRA Form dated November 15, 2007 in the file
believed that the second form was a duplicate, not thinking that an election change had been filed
within 48 hours of the initial election, and therefore did not include the second form with the
other documents in the file. Id. In light of the two pages of documents disclosed by ACC to
plaintiff that had not been disclosed to the FOIA division, the FAPL Branch contacted the FP&F
office and conducted a page-by-page review of their file documents compared to what had been
forwarded to the FOIA division. Id. ¶16. A review of the FP&F file revealed no further
responsive documents. Id. These searches resulted in a total of twenty (20) pages of responsive

materials being located, which were disclosed to plaintiff with information on eleven (11) pages

being withheld pursuant to applicable FOIA Exemptions.  Id. ¶ 17.

All information not exempted from disclosure pursuant to the FOIA exemptions

cited above was correctly segregated and the non-exempt portions promptly released.  Suzuki

Decl. ¶ 32.  Each document partially released was reviewed to determine if there were any

portions of the document that could be released.  Id.  Information withheld as indicated in the

attached Vaughn index was individually determined to be exempt from release; however, the

segregable portions were released to plaintiff.  Id.

## II.    SUMMARY JUDGMENT IS WARRANTED IN DEFENDANT'S FAVOR.

Summary judgment is appropriate at this time because defendant has conducted a proper

search for documents responsive to plaintiff's request and has released to plaintiff all non-

exempt, responsive documents.  To the extent that documents were withheld pursuant to FOIA

exemptions, those exemptions were properly invoked.  Further, all reasonably segregable

materials have been released to plaintiff.  For these reasons, summary judgment is warranted in

defendant's favor.

### A.    Standard of Review.

In general, summary judgment is the procedural vehicle by which most FOIA actions are

resolved.  See, e.g., Miscavige v. IRS, 2 F.3d 366, 369 (11th Cir. 1993) ("Generally, FOIA cases

should be handled on motions for summary judgment, once the documents in issue are properly

identified.").  While the defendant has the burden of proof on all material issues related to the

merits of any claimed FOIA exemptions, summary judgment is to be freely granted where there

are no material facts in dispute and the agency is entitled to judgment as a matter of law.  See,

e.g., Alyeska Pipeline Serv. v. EPA, 856 F.2d 309, 314 (D.C. Cir. 1988); Hayden v. National

Security Agency, 608 F.2d 1381, 1386-87 (D.C. Cir. 1979) (summary judgment appropriate in

FOIA cases on the basis of affidavits).  Under the FOIA, which supplies the applicable

substantive legal principles, defendant in this case bears the burden of proving three elements:

> (1)  **"adequacy of the search"** -- that is, the search for responsive documents was adequate;
>
> (2)  **"applicability of exemptions"** -- that is, the information withheld from release falls within an exemption from the FOIA's general requirement that information be released; and
>
> (3)  **"reasonable segregability"** -- that is, the "reasonably segregable," non-exempt information has been disclosed after deletion of the exempt information.

See Public Employees for Environmental Responsibility v. United States Dep't of the Interior,

No. Civ.A. 06-182, 2006 WL 3422484, at *8 (D.D.C. Nov. 28, 2006) (holding that agency had

"met its summary judgment burden by demonstrating that it fully discharged its FOIA obligations

by conducting a reasonable and adequate search for documents, properly invoking applicable

FOIA exemptions, and releasing all reasonably segregable factual materials from responsive

documents.") (citations omitted).  See also NYC Apparel FZE v. United States Customs &

Border Protection, 484 F. Supp. 2d 77, 86 (D.D.C. 2007) ("'[A]gency entitled to summary

judgment if no material facts are in dispute and if it demonstrates that each document that falls

within the class requested has been produced . . . or is wholly[, or partially] exempt [from

disclosure].'") (quoting Students Against Genocide v. Dep't of State, 257 F.3d 828, 833 (D.C.

Cir. 2001).  As discussed more fully infra, the agency has fully satisfied its obligations under the

FOIA in this case.

7

**B.      The Agency Has Conducted A Proper Search for Records.**

In responding to a FOIA request, an agency is under a duty to conduct a good faith search for responsive records, "using methods which can be reasonably expected to produce the information requested." Oglesby v. United States Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990) (citations omitted); Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990); Cleary, Gottlieb, Steen & Hamilton v. Dep't of Health & Human Services, 844 F. Supp. 770, 776 (D.D.C. 1993).

This "reasonableness" standard focuses on the method of the search, not its results. Cleary, Gottlieb, 844 F. Supp. at 777 n.4 (citing Meeropol v. Meese, 790 F.2d 942, 952-53 (D.C. Cir. 1986)); see also Steinberg v. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994). The search standards under the FOIA do not require an agency to prove that all responsive documents have been located. Nation Magazine v. United States Customs Serv., 71 F.3d 885, 892 n.7 (D.C. Cir. 1995) (citation omitted). Instead, "the search need only be reasonable; it does not have to be exhaustive." Miller v. Dep't of State, 779 F.2d 1378, 1383 (8th Cir. 1985) (citing Shaw v. Dep't of State, 559 F. Supp. 1053, 1057 (D.D.C. 1983)). An agency is not required to search every record system, but need only search those systems in which it believes responsive records are likely to be located. Oglesby, 920 F.2d at 68. Nor is there a requirement that the search be perfect. Meeropol, 790 F.2d at 956. The fundamental question is not "'whether there might exist any other documents responsive to the request, but rather whether the *search* for those documents was *adequate*.'" Steinberg, 23 F.3d at 551 (citation omitted). "In demonstrating the adequacy of the search, the agency may rely on reasonably detailed, nonconclusory affidavits submitted in good faith." Weisberg v. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (citations

omitted).

In this case, defendant made good faith efforts to search for the requested records, using methods which were reasonably expected to produce the information requested. As explained in the Suzuki Declaration, in conducting its search for records, CBP searched the Seized Asset and Case Tracking System (SEACATS) module of the Treasury Enforcement Communications System (TECS). Suzuki Decl. ¶ 16. TECS records constitute a CBP system of investigatory files, which contain data on violators and possible violators of laws enforced by CBP. Id. SEACATS information pertains to tracking forfeited or seized property, penalties, and liquidated damages from case initiation to final resolution. Id. Furthermore, in light of the two pages of documents disclosed by ACC to plaintiff that had not been disclosed to the FOIA division, the FAPL Branch contacted the FP&F office and conducted a page-by-page review of their file documents compared to what had been forwarded to the FOIA division. Id. The two (2) pages of documents at issue that were contained in the FP&F case file but were not copied for the FOIA division appeared to have been left out as the result of an administrative oversight/error. Id. A review of the FP&F file revealed no further responsive documents. Id.

These actions by the agency demonstrate that an adequate search for documents was performed. It searched using the most reasonable method available, i.e., searching its own system of records, and extended its search to other offices/files. Suzuki Decl. ¶ 16. For these reasons, the agency's search was adequate. See, e.g., Neal v. Snow, No. Civ.A. 06-1124, 2007 WL 1169339, at *3 (D.D.C. Apr. 19, 2007) (holding that search was reasonable where, despite not locating any records, agency's search was "reasonable" and conducted where "responsive records would likely have been located."); Landmark Legal Foundation v. EPA, 272 F. Supp. 2d

9

59 (D.D.C. 2003) (holding that agency's search was adequate where agency's search "was not confined to one office or region, [and agency] searched all components of the agency.") (citation omitted). Cf. Jackson v. United States Attorney's Office, 293 F. Supp. 2d 34, 38 (D.D.C. 2003) (holding that search was inadequate where declaration merely stated that declarant "reviewed the file" presented to him by the USAO and failed to "explain what kind of search was conducted or [the] procedure followed by the USAO to compile the documents which ultimately constituted the . . . file.").

### C.    The Agency has Properly Withheld Documents.

To meet its burden of demonstrating that a FOIA exemption applies, a defendant may rely on affidavits or declarations and other evidence showing that the documents are exempt from disclosure. Hayden v. Nat'l Sec. Agency, 608 F.2d 1381, 1384, 1386-87 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980). Summary judgment may be granted solely on the basis of agency affidavits or declarations if they "'afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding.'" Campbell v. Dep't of Justice, 164 F.3d 20, 30 (D.C. Cir. 1998) (citation omitted). See also Williams v. FBI, 69 F.3d 1155, 1159 (D.C. Cir. 1995); Hayden, 608 F.2d at 1387; Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981).

A total of twenty (20) pages of responsive documents were found, which were disclosed to plaintiff with certain information on eleven (11) pages being withheld according to applicable FOIA Exemptions. Id. ¶ 17. Released copies of partially redacted documents contain the coded categories of FOIA exemptions invoked to detail the nature of the information withheld. Id. ¶ 20. Thus, for example, if "b6" appears on a document, this refers to FOIA

Exemption (b)(6).  Id.[5]

### 1.    Information was Properly Withheld Under Exemption 2

FOIA Exemption 2 "protects from mandatory disclosure records 'related solely to the internal personnel rules and practices of an agency.'"  Long v. United States Dep't of Justice, 450 F. Supp. 2d 42, 54 (D.D.C. 2006) (quoting 5 U.S.C. 552(b)(2)).  To be encompassed within Exemption 2, the information must "be 'used predominately for internal purposes.'"  Id. (citations omitted).  Once this "threshold test" is met, an agency may properly withhold material pursuant to Exemption 2 by showing "'that either (1) disclosure may risk circumvention of agency regulation, or (2) the material relates to trivial administrative matters of no genuine public interest.'"  Id. (citations omitted).[6]

In this case, the agency properly withheld information pursuant to both the "low" and "high" Exemption 2 categories.  Concerning the "low 2" information, the agency redacted administrative markings on eight (8) pages of information: five (5) SEACATS screen-prints and three (3) customs forms.  Suzuki Decl. ¶ 23.  The administrative markings consist of alpha-numeric case file numbers, terminal identification numbers, computer function codes, and agency routing information that assists the agency in the organization of its records.  Id.  This information is typically located at either the top and/or bottom of the customs forms and the

_____

[5]Pursuant to the Court's ruling in Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974), the agency has produced a Vaughn index describing the nature of any redacted information, which is attached as Exhibit A to the Suzuki Declaration.

[6]Where disclosure of information would risk circumvention of agency regulations, the agency is said to invoke the "high 2 Exemption," whereas disclosure of information concerning internal records that deal with "trivial" matters is said to "fall within the 'low 2' exemption."  Long, 450 F. Supp. 2d at 54 (citations omitted).

SEACATS screen prints.  Id.  See also Ex. A (Vaughn index).  This material falls squarely within the scope of Exemption 2's "low 2" protection.  See, e.g., Long v. United States Dep't of Justice, 450 F. Supp. 2d 42, 56 (D.D.C. 2006) (noting that the District of Columbia Circuit "has clarified that Exemption 2 broadly 'applies to material used for predominately internal purposes.'") (citations omitted).

Concerning the "high 2" information, the agency redacted information regarding the administrative procedures related to the operational responsibilities of CBP personnel, sensitive case numbers, project codes, and identification of law enforcement team or operational names and nomenclature contained on four (4) pages of SEACATS screen-prints and one (1) customs form.  Suzuki Decl. ¶ 24.  This information consists of alpha-numeric codes, project codes, information systems that were checked, search/examination techniques and narrative information which would reveal law enforcement techniques, which are typically located at the center of the SEACATS screen prints under the headings "Circumstances/Remarks"; "Seizure Data"; and/or "Summary Data."  Suzuki Decl. ¶ 31.  Notably, this information shows, in part, the law enforcement techniques involved in developing seizure cases and disclosure of these techniques would render future law enforcement efforts ineffective.  Id.; see also Suzuki Decl., Ex. A.  This information is precisely the type of information courts have held subject to protection under the "high 2" exemption.  See Changzhou Laosan Group v. United States Customs & Border Protection Bureau, No. Civ.A. 04-1919, 2005 WL 913268, at *3 (D.D.C. Apr. 20, 2005) (holding that "[i]information described as 'law enforcement investigation case name,' . . . clearly falls within the 'high (b)(2) category[ and] . . . is properly withheld under Exemption 2[,]" while information such as "computer function codes, internal file numbers, [and] computer system and

12

report identity . . . are clearly documents that are predominately internal to the agency or are

sufficiently related to a personnel rule or practice, and are therefore both easily discernable and

properly withheld." ) (citation omitted); Putnam v. United States Dep't of Justice, 873 F. Supp.

705, 710 (D.D.C. 1993) (holding that "Exemption 2 may properly be invoked when the

information withheld is used predominately for internal purposes and when release of the

information risks circumvention of the law[,]" and FBI properly invoked Exemption 2 to shield

"symbols and numbers by which the FBI refers to informants in its internal files [which] is a

matter [of] essentially internal significance and is of little public interest.") (citation omitted).

Because Exemption 2 was only used to withhold strictly internal pieces of information, CBP has

properly invoked Exemption 2 in this instance.

### 2. Information Was Properly Redacted Under Exemptions 6 and 7(C).

Exemption 6 protects from disclosure personnel, medical, and similar files

the release of which would constitute a clearly unwarranted invasion of personal privacy. Id. ¶

25. This protection is afforded to information that would infringe on the personal privacy of

individuals about whom it pertains. Id. In this case, the names of CBP officials, other law

enforcement officials, and United Commercial Bank check authorized signatories associated with

this seizure matter were redacted on eight (8) pages of information to protect their personal

privacy. Id. Since plaintiff did not indicate that release of such information would be in the

public interest, the mere mention of specific individuals is sufficient to warrant protection under

this exemption. Id. See also Ex.

Exemption 7(C) exempts from mandatory disclosure under the FOIA information that has

been compiled for law enforcement purposes when disclosure "could reasonably be expected to

13

constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C); see Nation

Magazine v. United States Customs Serv., 71 F.3d 885, 896 (D.C. Cir. 1995).

Applying Exemption 7(C) requires a multi-step analysis. The first step is determining

whether the information has been compiled for a "law enforcement purpose." The term "law

enforcement purpose" includes enforcement of civil and criminal statutes, as well as those

statutes authorizing administrative (i.e., regulatory) proceedings. Center for Nat'l Policy Review

v. Weinberger, 502 F.2d 370, 373 (D.C. Cir. 1974). The next step is to determine if there is a

privacy interest. A privacy interest sufficient to justify application of Exemption 7(C) has been

found to exist in a wide variety of circumstances: (1) the identities of suspects and witnesses

who are identified in agency records in connection with law enforcement investigations[7]; (2) the

names of law enforcement officers who work on criminal investigations[8] and individuals who

provide information to law enforcement authorities.[9] All of these categories of individuals have

protectable privacy interests in their anonymity. Once a privacy interest has been established, it

must be balanced against the public interest, if there is any, that would be served by disclosure.

Albuquerque Publishing Co. v. United States Dep't of Justice, 726 F. Supp 851, 855 (D.D.C.

1989). The public interest in disclosure is limited to the FOIA's core purpose of "shed[ing] light

---

[7]Reporters Committee for Freedom of the Press v. United States Dep't of Justice, 816 F.2d 730, 740-41 (D.C. Cir. 1987), modified on other grounds, 831 F.2d 1124 (D.C. Cir. 1987), rev'd on other grounds, 489 U.S. 749 (1989); Computer Prof'ls for Social Responsibility v. U.S. Secret Serv., 72 F.3d 897, 904 (D.C. Cir. 1996).

[8]Davis v. United States Dep't of Justice, 968 F.2d 1276, 1281 (D.C. Cir. 1992); Lesar v. United States Dep't of Justice, 636 F.2d 472, 487-488 (D.C. Cir. 1980).

[9]Computer Prof'ls, 72 F.3d at 904; Farese v. United States. Dep't of Justice, 683 F. Supp. 273, 275 (D.D.C. 1987).

on an agency's performance of its statutory duties . . . ."  United States Dep't of Justice v.
Reporters Committee for Freedom of the Press, 489 U.S. 749, 773 (1989).

The information at issue here was compiled for a law enforcement purpose.  Suzuki Decl.
¶¶ 24-25.  The FP&F records meet the requirement for being compiled for law enforcement
purposes because these records are created as a result of the administrative law enforcement
proceedings, i.e., the seizure case.  Id. ¶ 27.  CBP's mission is to protect the borders of the
United States against terrorists and the instruments of terror, enforce the customs and
immigration laws of the United States, and foster the Nation's economy through lawful
international trade and travel.  Id. ¶ 28.  Its mission includes the processing of passengers,
conveyances, and merchandise entering the United States.  Id.  The creation and implementation
of effective law enforcement systems and procedures is paramount to achieving this mission.  Id.
The SEACATS system of records is a law enforcement system that tracks all seizures that take
place, provides property management of seized goods, and manages the fines and penalties
associated with seizures, which contributes to and supports CBP's law enforcement mission.  Id.
Given the nature of plaintiff's request and the description of the SEACATS system of records,
the twenty (20) pages of responsive records constitute law enforcement records because such
records are compiled in direct relation to CBP's law enforcement mandate to protect the United
States' borders.  Id.

Thus, in addition to Exemption 6, the names of individual CBP officials, other law
enforcement officials and United Commercial Bank check authorized signatories associated with
this seizure matter were redacted on the same eight pages of information identified above in
relation to Exemption 6, to protect their personal privacy.  Id.  Exemption 7(C) was asserted to

15

protect the identities of these individuals to protect them from unnecessary questioning and harassment concerning the administrative law enforcement proceedings.  Id.  See also Ex. A. Withholding such information traditionally has been protected by courts because release would reveal nothing about the operations and activities of the government and could invade well-recognized privacy interests.  See, e.g., Manna v. United States Dep't of Justice, 51 F.3d 1158, 1166 (3d Cir. 1995), cert. denied, 516 U.S. 975 (1995); Jones v. FBI, 41 F.3d 238, 246-47 (6th Cir. 1994).  The same result is warranted here.  The individuals whose privacy would be subject to invasion are identified in the records and there is no public interest served by disclosing the identity of CBP officers and third parties involved in this seizure case.  Suzuki Decl. ¶ 28.  Nor has plaintiff identified any public interest served by the disclosure of this information.  For all these reasons, the Court should find that the agency properly invoked Exemptions 6 and 7(C) to redact applicable personal information.

### 3.    Information was Properly Redacted Pursuant to Exemption 7(E).

Exemption 7(E) protects "records or information compiled for law enforcement purposes" but only to the extent that the release of these records or information "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law . . . ."  5 U.S.C. § 552(b)(7)(E).

CBP has a clear law enforcement mandate.  Id. ¶ 30; see also 6 U.S.C. § 111(b). The rational nexus CBP has between enforcement of federal laws and the information withheld pertains to the seizure and forfeiture of property for violation of reporting requirements under 31 U.S.C. §§ 5317, 5313, and 5324.  Suzuki Decl. ¶ 30.

The information redacted pursuant to Exemption 7(E) pertains to the identification of particular incidents and offices involved in the present matter and descriptions by seizing agents of the circumstances surrounding particular incidents.  Suzuki Decl. ¶ 31; see also Ex. A.  This information consists of alpha-numeric codes, project codes, information systems that were checked, search/examination techniques and narrative information which would reveal law enforcement techniques, which are typically located at the center of the SEACATS screen prints under the headings "Circumstances/Remarks"; "Seizure Data"; and/or "Summary Data."  Suzuki Decl. ¶ 31.  This information shows, in part, the law enforcement techniques involved in developing seizure cases and disclosure of these techniques would render future law enforcement efforts ineffective.  Id.

CBP has properly relied upon Exemption 7(E) to withhold this information because disclosing its investigation types and methods is precisely the type of information Exemption 7(E) was designed to protect from disclosure.  See, e.g., Brunetti v. F.B.I., 357 F. Supp. 2d 97, 108 (D.D.C. 2004) (holding that FBI properly relied on Exemption 7(E) to redact information ranking "investigative techniques."); Judicial Watch Inc. v. FBI, No. Civ.A. 00-745, 2001 WL 35612541, at *9 (D.D.C. Apr. 20, 2001) (holding that Exemption 7(E) was properly invoked to protect "the identities of two types of records concerning prison inmates which are often checked by FBI special agents[,]" where release of these identities could enable "prison inmates [to] be able to alter their activities thus hindering the effectiveness of this technique."); Atkins v. United States Dep't of Justice, No. Civ.A. 88-0842, 1990 WL 319989, at *4 (D.D.C. Feb. 26, 1990) (holding that the DEA properly invoked Exemption 7(E) to withhold "longstanding, successfully proven techniques and procedures . . . not commonly known to the public.") (internal quotation

17

marks and citation omitted).

### 4.    All Reasonably Segregable Material Has Been Released.

The FOIA requires that if a record contains information that is exempt from

disclosure, any "reasonably segregable" information must be disclosed after deletion of the

exempt information unless the non-exempt portions are "inextricably intertwined with exempt

portions." 5 U.S.C. § 552(b); Mead Data Central, Inc. v. United States Dep't of the Air Force,

566 F.2d 242, 260 (D.C. Cir. 1977). The agency must provide a "detailed justification" to

demonstrate that all reasonably segregable information has been released, id. at 261, and show

"with reasonable specificity" why protected information cannot be further segregated.

Armstrong v. Executive Office of the President, 97 F.3d 575, 578-79 (D.C. Cir. 1996).

Here, CBP has met its segregability obligation. First, the agency has submitted a detailed

Vaughn index setting forth an explanation of the redactions made to the documents provided to

plaintiff, as well as an explanation of the basis for the invocation of the applicable FOIA

exemptions. See Ex. A. Furthermore, the Suzuki Declaration further discusses the information

that was redacted and the basis of those redactions. As stated in that declaration, "[e]ach

document partially released was reviewed to determine if there were any portions of the

document that could be released. Information withheld as indicated in the attached Vaughn

Index was individually determined to be exempt from release; however, the segregable portions

were released to plaintiff." Suzuki Decl. ¶ 32.

In short, CBP expressly considered the segregability issue and properly concluded that no

additional information could be released without compromising information protected by FOIA

Exemptions 2, 6, 7(C) and 7(E).  Defendant has met its burden of demonstrating that it released

all reasonably segregable, non-exempt information.

## III.    <u>CONCLUSION</u>

For the reasons set forth above, defendant requests that summary judgment be entered in

its favor.

Respectfully submitted,

   /s/ Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

   /s/ Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney

   /s/ Michelle N. Johnson
MICHELLE N. JOHNSON, D.C. BAR # 491910
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W. – Room E4212
Washington, D.C. 20530
(202) 514-7139


Of Counsel:

Brooks Thomas
Assistant Chief Counsel
Customs & Border Protection
Atlanta, Georgia

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>EDHI MUHAMMAD,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Plaintiff,</td><td>)</td><td>Civil Action No.: 08-457 (ESH)</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>v.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>U.S. CUSTOMS & BORDER PROTECTION,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Defendant.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
</table>

## DEFENDANT'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE

Pursuant to LCvR 56.1 and 7(h), defendant, United States Customs & Border Protection ("CBP"), respectfully submits this statement of material facts as to which there is no genuine issue in support of its Motion for Summary Judgment.

### Plaintiff's FOIA Request

1.      By letter dated November 29, 2007, Mr. Peter S. Herrick, an attorney acting on behalf of plaintiff Edhi Muhammad, filed a request, pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA), seeking "all information relied upon by Customs for the seizure in [Customs Case Number 2008-1704-00011-01], including but not limited to bulletins, manuals, warrants, and instructions relied upon by Customs." See Declaration of Shari Suzuki ("Suzuki Decl."), Exhibit ("Ex.") B (FOIA Request dated November 29, 2007).  This request further sought "any records and/or documents . . .  and any potential on-going investigations pertaining to the requestor[,]" as well as "any custody reports, custody receipts, seizure notices, warrants, banking reports, banking documents, and/or any notices of publication regarding the requestor's

seized property." Id.

2.      By letter dated December 5, 2007, CBP's Fines, Penalties, and Forfeiture ("FP&F") Office informed plaintiff that his request would be processed by its centralized FOIA office located in Washington, D.C.  The letter also granted plaintiff an additional thirty-days to file a petition for his seizure case.  Suzuki Decl., Ex. C.[1]

3.      By letter dated January 25, 2008, the CBP/FOIA Division both acknowledged and responded to plaintiff's FOIA request.  Id. Ex. D.  Plaintiff was notified that a search of CBP's database had produced eighteen (18) pages responsive to plaintiff's request.  Id.  Seven (7) pages were disclosed to plaintiff in full and eleven (11) pages were disclosed with certain material redacted.  Suzuki Decl. ¶ 9.

4.      The redacted information consisted of information pertaining either to internal agency matters of a trivial nature pursuant to Exemption 2, identification of CBP or other third-party individuals associated with the FP&F case pursuant to Exemptions 6 and 7(C), or internal information that would risk circumvention of a legal requirement and/or would disclose techniques and procedures for law enforcement investigations or prosecutions pursuant to Exemptions 2 and 7(E).  Id.  See also Suzuki Decl., Ex. D.

5.      By letter dated February 4, 2008, Mr. Herrick, on behalf of Mr. Muhammad, appealed CBP's response.  Id. Ex. E.

6.      By letter dated February 5, 2008, the FOIA Appeals, Policy and Litigation

---

[1]In a letter dated January 2, 2008, having not yet received a response to his FOIA request, plaintiff filed an appeal.  Suzuki Decl. ¶ 8.  However, this appeal was received by the Atlanta field office and was not forwarded to the FOIA Appeals, Policy and Litigation Branch ("FAPLB") until after the filing of plaintiff's complaint.  Id. ¶¶ 1, 8.

("FAPL") Branch acknowledged receipt of plaintiff's appeal.  Id. Ex. F.

7.    In a letter dated March 4, 2008, the FAPL Branch responded to plaintiff's appeal, affirming CBP's response.  Id. Ex. G.  The FAPL Branch found that Exemption 2 was applicable to internal information related solely to the internal personnel rules and practices of CBP because this information was either of a trivial nature not of any genuine public interest or, alternatively, it was of a more substantial nature the disclosure of which would risk circumvention of a legal requirement.  Id.  In addition, the FAPL Branch determined that Exemptions 6 and 7(C) had been properly applied to the names and signatures of CBP officers and other third parties involved in the seizure case.  Id.; Suzuki Decl. ¶ 12.  Furthermore, the FAPL Branch concluded that Exemption 7(E) had been properly applied to information compiled for law enforcement purposes pertaining to techniques and procedures for law enforcement investigations or prosecutions because the information at issue related to CBP's law enforcement mandate.  Id.

8.    The FAPL Branch informed plaintiff that certain records responsive to his request did not belong to CBP and were being referred to Immigration and Customs Enforcement ("ICE"), another Department of Homeland Security component, for processing and a direct response to plaintiff.  Id.  ICE furnished a response directly to plaintiff and plaintiff has not appealed ICE's determination.  Suzuki Decl. ¶ 12.

9.    Plaintiff submitted a letter dated March 6, 2008, supplementing his prior FOIA appeal, in which he claimed that three(3) pages provided to him by the Office of the Associate Chief Counsel  ("ACC") in Atlanta had not been previously disclosed in response to his initial FOIA request or appeal.  Suzuki Decl., Ex. H (Letter dated March 6, 2008).

10.    The FAPL contacted the FP&F Office and ACC regarding the three (3) pages

3

provided to plaintiff and learned that ACC, in discussions with plaintiff's counsel regarding the underlying FP&F case, had provided plaintiff's counsel with these pages based on plaintiff's counsel's representation that he was unaware of the plaintiff's decision to withdraw his election of court proceedings in order to pursue administrative proceedings.  Suzuki Decl. ¶ 14.

11.    One (1) of the three (3) pages had already been released in full as part of the response to plaintiff's initial FOIA request and was reviewed as part of the appeal response.  <u>Id.</u> The remaining two (2) pages were not in the file sent by the FP&F office to the FOIA division for processing of the initial FOIA response and, similarly, were not contained in the filed reviewed on appeal.  <u>Id.</u>  It appears because of the relatively short period in which plaintiff decided to pursue administrative proceedings in lieu of his initial decision to pursue court proceedings that an administrative oversight/error occurred.  <u>Id.</u>  The administrative assistant copying the file and seeing the CAFRA Form dated November 15, 2007 in the file believed that the second form was a duplicate, not thinking that an election change had been filed within 48 hours of the initial election, and therefore did not include the second form with the other documents in the file.  <u>Id.</u>

### The Agency's Search for Records

12.    CBP engaged in a good faith effort to conduct a search for information responsive to plaintiff's FOIA request.  Suzuki Decl. ¶ 16.  In conducting its search for records, CBP searched the Seized Asset and Case Tracking System (SEACATS) module of the Treasury Enforcement Communications System (TECS).  <u>Id.</u>

13.    TECS records constitute a CBP system of investigatory files, which contain data on violators and possible violators of laws enforced by CBP.  <u>Id.</u>  SEACATS information

pertains to tracking forfeited or seized property, penalties, and liquidated damages from case initiation to final resolution.  Id.

14.    CBP also reviewed the case filed maintained by the FP&F Office in Atlanta.  Id. Furthermore, in light of the two pages of documents disclosed by ACC to plaintiff that had not been disclosed to the FOIA division, the FAPL Branch contacted the FP&F office and conducted a page-by-page review of their file documents compared to what had been forwarded to the FOIA division.  Id.  The two (2) pages of documents at issue that were contained in the FP&F case file but were not copied for the FOIA division appeared to have been left out as the result of an administrative oversight/error.  Id.  A review of the FP&F file revealed no further responsive documents.  Id.

15.    In light of the two (2) pages provided to plaintiff from ACC, a total of twenty (20) pages of responsive documents were found, which were disclosed to plaintiff with certain information on eleven (11) pages being withheld according to applicable FOIA Exemptions.  Id. ¶ 17.  Released copies of partially redacted documents contain the coded categories of FOIA exemptions invoked to detail the nature of the information withheld.  Id. ¶ 20.  Thus, for example, if "b6" appears on a document, this refers to FOIA Exemption (b)(6).  Id.

**Information Withheld Pursuant to FOIA Exemptions**

16.    Pursuant to the Court's ruling in Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974), the agency has produced a Vaughn index describing the nature of any redacted information, which is attached as Exhibit A to the Suzuki Declaration.

**Exemption 2**

17.    Exemption 2 of the FOIA exempts from mandatory disclosure records, or portions

thereof, that are related to solely internal personnel rules and practices of an agency.  Id. ¶ 21.

This exemption encompasses two distinct categories of information: (1) internal matters of a

relatively trivial nature not of any genuine public interest, referred to as "low 2" information" and

(2) more substantial internal matters, the disclosure of which would risk circumvention of a legal

requirement, referred to as "high 2" information."  Id.

18.    The "low 2" information withheld in this matter consists of administrative

markings on eight (8) pages of information: five (5) SEACATS screen-prints and three (3)

customs forms.  Id. ¶ 23.  The administrative markings consist of alpha-numeric case file

numbers, terminal identification numbers, computer function codes, and agency routing

information that assists the agency in the organization of its records.  Id.  The location of this

information is typically located at either the top and/or bottom of the customs forms and the

SEACATS screen prints.  Id.  See also Ex. A (Vaughn index).

19.    The "high 2" information withheld in this matter consists of the administrative

procedures related to the operational responsibilities of CBP personnel, sensitive case numbers,

project codes, and identification of law enforcement team or operational names and nomenclature

contained on four (4) pages of SEACATS screen-prints and one (1) customs form.  Suzuki Decl.

¶ 24.  The information redacted pertains to the identification of particular incidents and offices

involved with the present matter and descriptions by seizing agents of the circumstances

surrounding particular incidents.  Id.  This information also consists of alpha-numeric case codes

and narrative information, which is typically located at the center of the SEACATS screen prints

under the headings "Circumstances/Remarks"; "Seizure Data"; and/or "Summary Data." Id.; see also Suzuki Decl., Ex. A.

**Exemption 6**

20.     Exemption 6 protects from disclosure personnel and medical files and similar files the release of which would constitute a clearly unwarranted invasion of personal privacy. Id. ¶ 25. This protection is afforded to information that would infringe on the personal privacy of individuals about whom it pertains. Id.

21.     In this case, the names of CBP officials, other law enforcement officials, and United Commercial Bank check authorized signatories associated with this seizure matter were redacted on eight (8) pages of information to protect their personal privacy. Id. Since plaintiff did not indicate that release of such information would be in the public interest, the mere mention of specific individuals is sufficient to warrant protection under this exemption. Id. See also Ex. A.

**Exemption 7(C)**

22.     Exemption 7(C) exempts from disclosure "records and information compiled for law enforcement purposes" the disclosure of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

23.     Exemption 7(C) applies to civil, criminal, and administrative law enforcement proceedings and protects, among other information, the identity of law enforcement personnel and third parties referenced in files compiled for law enforcement purposes. Suzuki Decl. ¶ 26.

24.     The FP&F records meet the requirement for being compiled for law enforcement purposes because these records are created as a result of the administrative law enforcement

proceedings, i.e., the seizure case.  Id. ¶ 27.

25.     CBP's mission is to protect the borders of the United States against terrorists and the instruments of terror, enforce the customs and immigration laws of the United States, and foster the Nation's economy through lawful international trade and travel.  Id. ¶ 28.  Its mission includes the processing of passengers, conveyances, and merchandise entering the United States. Id.  The creation and implementation of effective law enforcement systems and procedures is paramount to achieving this mission.  Id.

26.     The SEACATS system of records is a law enforcement system that tracks all seizures that take place, provides property management of seized goods, and manages the fines and penalties associated with seizures, which contributes to and supports CBP's law enforcement mission.  Id.

27.     Given the nature of plaintiff's request and the description of the SEACATS system of records, the twenty (20) pages of responsive records provided to plaintiff constitute law enforcement records because such records are compiled in direct relation to CBP's law enforcement mandate to protect the United States' borders.  Id.  Further, the individuals whose privacy would be subject to invasion are identified in the records and there is no public interest served by disclosing the identity of CBP officers and third parties involved in this seizure case. Id.

28.     Thus, in addition to Exemption 6, the names of individual CBP officials, other law enforcement officials and United Commercial Bank check authorized signatories associated with this seizure matter were redacted on the same eight pages of information identified in paragraph 21, to protect their personal privacy.  Id.  Exemption 7(C) was asserted to protect the

identities of these individuals to protect them from unnecessary questioning and harassment concerning the administrative law enforcement proceedings.  Id.  See also Ex. A.

**Exemption 7(E)**

29.    Exemption 7(E) exempts from disclosure information that would reveal techniques and procedures for law enforcement investigations or prosecutions or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.  Id. ¶ 29.

30.    Thus, where an agency has a clear law enforcement mandate, it need only establish a rational nexus between enforcement of a federal law and the information withheld based on a (b)(7) exemption.  Id.

31.    CBP has a clear law enforcement mandate.  Id. ¶ 30; see also 6 U.S.C. § 111(b). The rational nexus CBP has between enforcement of a federal law and the information withheld pertains to the seizure and forfeiture of property for violation of reporting requirements under 31 U.S.C. §§ 5317, 5313, and 5324.  Suzuki Decl. ¶ 30.

32.    The information redacted pursuant to Exemption 7(E) pertains to the identification of particular incidents and offices involved in the present matter and descriptions by seizing agents of the circumstances surrounding particular incidents.  Id. ¶ 31; see also Ex. A. This information consists of alpha-numeric codes, project codes, information systems that were checked, search/examination techniques and narrative information that would reveal law enforcement techniques, which are typically located at the center of the SEACATS screen prints under the headings "Circumstances/Remarks"; "Seizure Data"; and/or "Summary Data."  Suzuki Decl. ¶ 31.  This information shows, in part, the law enforcement techniques involved in

9

developing seizure cases and disclosure of these techniques would render future law enforcement efforts ineffective.  Id.

**Segregability**

      33.    Under the FOIA, "any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."  5 U.S.C. § 552(b).

      34.    All information not exempted from disclosure pursuant to the FOIA exemptions cited above was correctly segregated and the non-exempt portions promptly released.  Suzuki Decl. ¶ 32.  Each document partially released was reviewed to determine if there were any portions of the document that could be released.  Id.

      35.    Information withheld as indicated in the attached Vaughn index was individually determined to be exempt from release; however, the segregable portions were released to plaintiff.  Id.

                   Respectfully submitted,

                     /s/ Jeffrey A. Taylor
                  JEFFREY A. TAYLOR, D.C. BAR # 498610
                  United States Attorney

                     /s/ Rudolph Contreras
                  RUDOLPH CONTRERAS, D.C. BAR #  434122
                  Assistant United States Attorney

                     /s/ Michelle N. Johnson
                  MICHELLE N. JOHNSON, D.C. BAR # 491910
                  Assistant United States Attorney
                  United States Attorney's Office
                  Civil Division

555 4th Street, N.W. – Room E4212
Washington, D.C. 20530
(202) 514-7139


Of Counsel:

Brooks Thomas
Assistant Chief Counsel
Customs & Border Protection
Atlanta, Georgia

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| EDHI MUHAMMAD | ) | |
| | ) | |
| | ) | |
| Plaintiff | ) | Civil Action No. |
| | ) | |
| | ) | 1:08-cv-00457-ESH |
| U.S. CUSTOMS & BORDER PROTECTION | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

### DECLARATION OF SHARI SUZUKI

I, SHARI SUZUKI, pursuant to 28 U.S.C. § 1746, declare the following to be true and correct:

1.  I am the Chief of the FOIA Appeals, Policy and Litigation Branch (hereinafter, the FAPL Branch), Regulations and Disclosure Law Division, Office of Regulations and Rulings, Office of International Trade, United States Customs and Border Protection (CBP), U.S. Department of Homeland Security (DHS) in Washington, D.C. The FAPL Branch is the Office within DHS/CBP that is charged, at all times pertinent to this litigation, with the responsibility of managing and responding to administrative appeals of initial responses to information access requests made pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552.

2.  As the Chief of the FAPL Branch, I am responsible for the overall supervision and management of the FAPL Branch, and I serve as the official with the following responsibilities, *inter alia*: 1) giving guidance and instructions to the personnel in CBP regarding the processing of FOIA requests; 2) adjudicating administrative appeals that concern FOIA requests; and, 3) overseeing all CBP activities related to information disclosure. I have held this position since April 2, 2006.

3.  I am familiar with Mr. Edhi Muhammad's (hereinafter Plaintiff) request for information from CBP, pursuant to the FOIA.  All information contained herein is based upon information furnished to me in my official capacity, and the statements I make in this declaration are based on my personal knowledge, which includes knowledge acquired through, and agency files reviewed, in the course of my official duties.

4.  The purpose of this Declaration is to describe for the Court Defendant's handling of Plaintiff's FOIA request and appeal, and to provide the Court and Plaintiff with a <u>Vaughn</u> Index, identifying information responsive to Plaintiff's FOIA request, but exempt from disclosure under the FOIA, in accordance with <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C.Cir. 1973), *cert. denied*, 415 U.S. 977 (1974).  *See* Attachment A (identifying the documents disclosed in part with redactions made and identifying the documents released in full to Plaintiff).  This Declaration and its <u>Vaughn</u> Index attachments provide the Court and Plaintiff with an identification of information that was either disclosed or withheld, the statutory exemption(s) claimed, and the justification for asserting the exemptions used to withhold certain information contained in the record at issue.

5.  This Declaration consists of:  (I) a summary of the relevant facts and correspondence regarding Plaintiff's FOIA request and appeal; (II) an explanation of the search for records responsive to Plaintiff's request; (III) an explanation of the notation form used to identify the justification for redacted information; (IV) the justification for withholding information under the FOIA; and (V) a statement regarding the segregability of the document partially withheld.

**I. Summary of Relevant Facts and Correspondence Concerning Plaintiff's FOIA and Appeal**

6.  On November 29, 2007 Plaintiff filed a FOIA request with the CBP Fines, Penalties and Forfeiture Office (FP&F) in Atlanta, Georgia, that requested, in general, all information relied upon by Customs for the seizure in Customs Case Number 2008-1704-000011-01, which pertains to the October 10, 2007 seizure of a United Commercial Bank Cashier's Check (#712300336) in the amount of $ 58,738.80.  The request specifically sought copies of any documents, photographs, and seizure reports prepared and/or taken during the Customs investigations into the present matter.  Further, the request sought copies of any records that pertain to the requester and any potential on-going investigations pertaining to the requester. Lastly, the request sought copies of any custody reports and receipts, seizure notices, warrants, banking reports and documents, and/or any notices of publication regarding the requester's seized currency.  The request stated that CBP must expeditiously process the request, because a certified compelling need exists based upon knowledge and belief of an ongoing seizure case. *See* Attachment B.

7.  On December 5, 2007 the FP&F FOIA processor wrote Plaintiff that, pursuant to current FOIA policy, the FOIA request of November 29, 2007 would be processed by the new centralized FOIA Division Office located in Washington, D.C.  *See* Attachment C.

8.  By letter dated January 2, 2008, having not yet received a response to his FOIA request, Plaintiff submitted an appeal.  It appears that the letter was received by the FP&F Office. However, the letter was not received by the FAPL Branch.  After the filing of Plaintiff's Complaint in which the letter was mentioned, FAPL Branch obtained a copy of the letter from the FP&F Office.

3

9.   On January 25, 2008 CBP/FOIA Division both acknowledged and responded to Plaintiff's request stating that a search produced eighteen (18) pages responsive to the request:  seven (7) pages being disclosed in full and eleven (11) pages being disclosed with certain material redacted.  The material redacted was information pertaining either to internal agency matters of a trivial nature, pursuant to Exemption (b)(2), to identification of CBP or other third-party individuals associated with the FP&F case, pursuant to Exemptions (b)(6) and (b)(7)(C), and/or internal information that would risk circumvention of a legal requirement and/or would disclose techniques and procedures for law enforcement investigations or prosecutions, pursuant to Exemptions (b)(2) and (b)(7)(E).  *See* Attachment D.

10.   On February 4, 2008 Plaintiff appealed CBP's response.  *See* Attachment E.

11.   On February 5, 2008 the FAPL Branch acknowledged receipt of the FOIA appeal.  *See* Attachment F.

12.   On March 4, 2008 the FAPL Branch issued its response to Plaintiff's appeal affirming the initial decision of CBP.  The appeal response found that the application of FOIA Exemptions (b)(6) and (b)(7)(C) to the names and signatures of CBP Officers and other third parties involved in the seizure case was proper because this personal identifying information was protected under the FOIA.  The appeal response also found that the application of FOIA Exemption (b)(2) to internal information related solely to the internal personnel rules and practices of CBP was proper because this information was either of a trivial nature not of any genuine public interest or of a more substantial nature the disclosure of which would risk circumvention of a legal requirement.  Additionally, the appeal response found that the application of FOIA Exemption (b)(7)(E) to information compiled for law enforcement purposes pertaining to techniques and

4

procedures for law enforcement investigations or prosecutions was proper because this type of information was also protected under the FOIA because it relates to CBP's law enforcement mandate. Lastly, the appeal response informed the Plaintiff that certain records that were located did not belong to CBP and were being referred to another Department of Homeland Security component for processing and a direct response to the Plaintiff. Twelve (12) pages were referred to United States Immigration and Customs Enforcement (ICE), another component agency within the Department of Homeland Security. ICE furnished a response to the Plaintiff and Plaintiff has not appealed that separate determination. *See* Attachment G.

13. On March 6, 2008 Plaintiff submitted a supplement to his FOIA appeal claiming that three (3) pages provided to Plaintiff by the Office of Associate Chief Counsel (ACC) in Atlanta had not been previously disclosed in response to either the initial FOIA request or the appeal. *See* Attachment H.

14. The FAPL Branch contacted the FP&F Office and ACC regarding the three (3) pages provided to Plaintiff. The FAPL Branch learned that ACC, in discussions with Plaintiff's Counsel regarding the underlying FP&F case, had provided Plaintiff's Counsel with the pages because Plaintiff's Counsel claimed to be unaware of Plaintiff's decision to withdraw his election of court proceedings in order to pursue administrative proceedings. One of the three (3) pages had already been released in full as part of the response to the initial FOIA request and reviewed as part of the appeal response. The other two (2) pages were not in the file sent by the FP&F Office to the FOIA Division for processing of the initial FOIA response and, similarly, were also not contained in the file reviewed on appeal. It appears that because of the relatively short period in which Plaintiff decided to pursue administrative proceedings in lieu of court

proceedings—as attested by the November 19, 2007 letter from Plaintiff and his Election of

Proceedings CAFRA FORM AF PUBLISH (CAFRA Notice)—that an administrative

oversight/error occurred. The administrative assistant copying the file and seeing the one

CAFRA Notice (dated November 15, 2007) in the file thought that the second copy of the same

form was a duplicate, not thinking that an election change had been filed within a 48-hour

period, and did not include it with the other documents in the file.

15.    On March 17, 2008 Plaintiff commenced this FOIA lawsuit.

## II.  Explanation of the Search for Records Responsive to Plaintiff's Request

16.    CBP engaged in a good faith effort to conduct a search for the requested information, using

methods which were reasonably expected to produce the information requested. The relevant

records system that was searched was the SEACATS (Seized Asset and Case Tracking System)

module of the Treasury Enforcement Communications System (TECS). TECS records constitute

a CBP system of investigatory files, which contain data on violators and possible violators of

laws enforced by CBP. SEACATS information pertains to tracking forfeited or seized property,

penalties, and liquidated damages from case initiation to final resolution. CBP also reviewed the

case file maintained by the FP&F Office in Atlanta. Regarding the two (2) pages of documents

disclosed by ACC to Plaintiff that were not disclosed by the FOIA Division, FAPL Branch

contacted the FP&F Office and conducted a page-by-page review of their file documents

compared to what was forwarded to FOIA Division. The two (2) pages of documents at issue in

this matter were contained in the FP&F case file but were not copied for the FOIA Division

Office. It appears that because of the relatively short period of time in which plaintiff decided to

pursue administrative proceedings in lieu of court proceedings—as attested by the November 19,

2007 letter from Plaintiff and his Election of Proceedings CAFRA FORM AF PUBLISH

(CAFRA Notice)—that an administrative oversight/error occurred. The administrative assistant

copying the file and seeing the one CAFRA Notice (dated November 15, 2007) in the file

thought that the second copy of the same form was a duplicate, not thinking that an election

change had been filed within a 48-hour period, and did not include it with the other documents in

the file. This administrative oversight explains why the two (2) records at issue here were not

included in the case file sent to FOIA Division. In either event, after review of the FP&F file, no

other responsive documents were located.

17.   With regard to the FOIA request made by the Plaintiff, a search was conducted and a total

of 20 pages of responsive documents were found, which were disclosed to Plaintiff with certain

information on eleven (11) pages withheld pursuant to either Exemptions (b)(2), (b)(6),

(b)(7)(C), and (b)(7)(E) of the FOIA.

18.   Eight (8) pages contained the names and/or signatures of CBP Officers or other third party

individuals associated with the seizure case and were reviewed to determine whether they could

be disclosed in their entirety, disclosed with redaction, or withheld in their entirety. If

information in the document was exempt, the appropriate exemption was marked on the face of

the document. Each line of this document was reviewed to determine if the document could be

released with redactions, and the appropriate redactions were made under each Exemption, with

the Exemption(s) noted on the document next to the redacted material. Specifically, where

Exemption (b)(6) was asserted, the material was reviewed to ensure that the information was

contained in personnel and medical files and similar files and that the disclosure of this

information would constitute a clearly unwarranted invasion of privacy. Specifically, where

Exemption (b)(7)(C) was asserted, the material was reviewed to ensure that the information was contained in law enforcement records and that disclosure of this information could reasonably be expected to constitute an unwarranted invasion of personal privacy.

19.    Eight (8) pages contained information related solely to the internal personnel rules and practices of an agency.  Eight (8) pages contained internal information of a relatively trivial nature not of any genuine public interest; the information being compiled and intended to be used predominately for internal administrative and law enforcement/investigatory purposes. Five (5) pages contained internal information of a more substantial nature, pertaining to law enforcement procedures and identifying the means by which this information was compiled and disseminated.  The disclosure of this latter information would significantly risk the circumvention of agency statutes or regulations, thus, impeding CBP's law enforcement activities in the administration of forfeited or seized properties.  These pages were reviewed to determine whether they could be disclosed in their entireties, disclosed with redactions, or withheld in their entireties.  If information in the document was exempt, the appropriate exemption was marked on the face of the document.  Each line of these documents were reviewed to determine if the document could be released with redactions, and the appropriate redactions were made under each Exemption, with the Exemption(s) noted on the document next to the redacted material.  Three (3) pages marked pursuant to the (b)(2) exemption category that pertains to internal information of a more substantial nature, were also marked under exemption (b)(7)(E), which pertains to information that would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

### III.  Explanation of the Notation Form Used to Identify the Justification for Redacted Information

20.   The released copies of partially redacted responsive documents contain the coded categories of FOIA exemptions employed to detail the nature of the information withheld.  For example, if "b6" appears on a document, this refers to Exemption (b)(6) of the FOIA, which protects certain information the disclosure of which would violate personal privacy of individuals.  The narrative description of withheld information, as provided in this declaration and the attached Vaughn Index, is unique to each document described.  This description is intended to provide the Court and Plaintiff with a general understanding of the document or material withheld without being so detailed as to specifically identify, and hence release, the material sought to be protected.

### IV.  Justification for Redacted Materials

A. **5 U.S.C. § 552(b)(2): Records Related Solely to the Internal Personnel Rules and Practices of an Agency which Concern Matters of either a Relatively Trivial Nature Not of Any Genuine Public Interest or Matters of a More Substantial Nature, the Disclosure of which would Risk Circumvention of a Legal Requirement**

21.   Exemption (b)(2) (5 U.S.C. § 552(b)(2)) exempts from mandatory disclosure records, or portions thereof, that are related solely to the internal personnel rules and practices of an agency. This exemption encompasses two distinct categories of information:

(1)  internal matters of a relatively trivial nature not of any "genuine public interest" —often referred to as "low 2" information; and,

(2)  more substantial internal matters, the disclosure of which would risk circumvention of a legal requirement—often referred to as "high 2" information.  See Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C.Cir. 1992)(describing "low 2" and "high 2" aspects of this exemption).

22.    To withhold information under Exemption (b)(2), this jurisdiction requires an agency to satisfy two requirements.  First, it must show that such materials are "used for predominantly internal purposes."  This includes a showing that the information is not agency "secret law" (i.e., internal "instructions to agency personnel ... on how to regulate members of the public.").  Am. Lawyer Media, Inc. v. SEC,, 2002 U.S.Dist. LEXIS 16940 (D.D.C. 2002), citing Crooker v. ATF, 670 F.2d 1051, 1075 (D.C.Cir. 1981)(en banc); Schwaner v. Dep't of Air Force, 898 F.2d 793, 794 (D.C.Cir. 1990).  Once an agency establishes that the material is "predominantly internal," and not "secret law," the second requirement is a showing that disclosure would either "risk circumvention of agency regulation" ("high 2 information") or that "the material relates to trivial administrative matters of no genuine public interest" ("low 2 information").  Am. Lawyer Media, Inc. decision, supra, citing Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C.Cir. 1992).

23.  The "low 2" information withheld pursuant to Exemption (b)(2) in this matter consists of administrative markings on eight (8) pages of information:  five (5) SEACATS screen-prints and three (3) customs forms.  The administrative markings consist of alpha-numeric case file numbers, terminal identification numbers, computer function codes, and agency routing information that assists the agency in the organization of its records.  The location of this information is typically located at either the top and/or bottom of the customs forms and the SEACATS screen prints.

24.  The "high 2" information withheld pursuant to Exemption (b)(2) in this matter consists of the administrative procedures related to the operational responsibilities of CBP personnel, sensitive case numbers, project codes, and identification of law enforcement team or operational names and nomenclature on four (4) pages of SEACATS screen-prints and one (1) customs form.  The information redacted pertains to the identification of particular incidents and offices involved with the present matter and descriptions by seizing agents of the circumstances surrounding particular incidents.  This information ("high 2" information) consists of alpha-numeric case codes and narrative information, which is typically located at the center the SEACAT screen prints under the headings "Circumstances/Remarks", "Seizure Data" and/or "Summary Data".

**B.  5 U.S.C. § 552(b)(6): Personnel and Medical Files and Similar Files the Disclosure of which would Constitute a Clearly Unwarranted Invasion of Personal Privacy**

25.  Exemption (b)(6) (5 U.S.C. § 552(b)(6)) exempts from disclosure personnel and medical files and similar files the release of which would constitute a clearly unwarranted invasion of personal privacy.  This protection is afforded to information that would infringe on the personal privacy of individuals about whom it pertains.  The United States Supreme Court in United States v. Washington Post Co., 456 U.S. 595 (1982) stated in reliance on the legislative history of the FOIA that the phrase "personnel and medical and similar files" was to be broadly interpreted and made it clear that all information that "applies to a particular individual" meets the threshold requirement for Exemption (b)(6) protection.  Once the threshold requirement is met, Exemption (b)(6) requires a balancing of the public's right to know against an individual's

right to privacy to determine whether disclosure of the records at issue would constitute a clearly unwarranted invasion of a person's privacy. Dep't of the Air Force v. Rose, 425 U.S. 352 (1976). It must be ascertained whether a protectible privacy interest exists that would be threatened by disclosure. In this matter the names of CBP officials, other law enforcement officials and United Commercial Bank check authorized signatories associated with this seizure matter were redacted on eight (8) pages of information to protect their personal privacy. Since no showing of 'public interest' was advanced by Plaintiff, the mere mention of specific individuals is enough to warrant protection under this exemption.

## C. 5 U.S.C. § 552(b)(7)(C): Records and Information Compiled for Law Enforcement Purposes that Could Reasonably be Expected to Constitute an Unwarranted Invasion of Personal Privacy

26. In addition to Exemption (b)(6), the names of individual CBP officials, other law enforcement officials and United Commercial Bank check authorized signatories associated with this seizure matter were redacted on the same eight (8) pages of information as identified in paragraph 25 to protect their personal privacy. Exemption (b)(7)(C) exempts from disclosure "records and information compiled for law enforcement purposes" the disclosure of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Exemption (b)(7)(C) applies to civil, criminal, and administrative law enforcement proceedings, and protects, among other information, the identity of law enforcement personnel and third parties referenced in files compiled for law enforcement purposes. Exemption (b)(7)(C) was asserted to protect the identities of the above mentioned individuals to protect such individuals from unnecessary questioning and harassment concerning the administrative law enforcement proceedings they are involved in.

27. The FP&F records meet the requirement for being compiled for law enforcement purposes because these records are created as a result of the administrative law enforcement proceedings, i.e., the seizure case.

28. CBP's mission is to protect the borders of the Unites States against terrorists and the instruments of terror, enforce the customs and immigration laws of the United States, and foster our Nation's economy through lawful international trade and travel. Its mission includes the processing of passengers, conveyances, and merchandise entering into the United States. The creation and implementation of effective law enforcement systems and procedures is paramount to achieving this mission. The SEACATS system of records is a law enforcement system that tracks all seizures that take place, provides property management of seized goods, and manages the fines and penalties associated with seizures, which contributes to and supports CBP's law enforcement mission to protect the borders. Given the nature of Plaintiff's request and the description of the SEACATS system of records, the twenty (20) pages of responsive records constitute law enforcement records because such records are compiled in direct relation to CBP's law enforcement mandate to protect the U.S. borders. Further, the individuals whose privacy would be subject to invasion are identified in the records, and the invasion of that privacy is unwarranted. There is no public interest to be served by placing the identity information of CBP officers and third parties involved with the seizure case before the public.

**D.  5 U.S.C. § 552(b)(7)(E): Records and Information Compiled for Law**

**Enforcement Purposes that Would Disclose Techniques and Procedures**

**for Law Enforcement Investigations or Prosecutions**

29.  Exemption (b)(7)(E) exempts from disclosure information that would disclose techniques

and procedures for law enforcement investigations or prosecutions, or would disclose guidelines

for law enforcement investigations or prosecutions if such disclosure could reasonably be

expected to risk circumvention of the law.  See Fisher v. U.S. Dep't of Justice, 772 F.Supp. 7

(D.D.C. 1991)(explicitly recognizing categorical protection for law enforcement techniques and

procedures), aff'd, 968 F.2d 92 (1992); Keys v. Department of Homeland Security, 510

F.Supp.2d 121 (D.D.C. 2007); Hammes v. U.S. Customs Serv., 1994 WL 693717 (S.D.N.Y.

1994) (protecting criteria used to determine which passengers to stop and examine).  Exemption

(b)(7)(E) is essentially a codification of the "high 2" exemption.  Schwarz v. U.S. Dep't of

Treasury, 131 F.Supp.2d 142 (D.D.C. 2000).  Thus, where the agency has a clear law

enforcement mandate it only need establish a rational nexus between enforcement of a federal

law and the information withheld based on a (b)(7) exemption.  See Coastal Delivery Corp. v.

U.S. Customs Serv., 272 F.Supp.2d 958, 963 (C.D.Cal. 2003) (Exemptions (b)(2) & (7)(E) case

that allowed withholding of techniques or guidelines for law enforcement investigations); Pons

v. U.S. Customs Serv., 1998 U.S.Dist. LEXIS 6084 (D.D.C. 1998) (protecting cooperative

arrangements between Customs and other law enforcement agencies to keep them effective);

and, Judicial Watch, Inc. v. FBI, 2001 U.S.Dist. LEXIS 25732 (D.D.C. 2001) (protecting the

"identities of two types of [FBI] records concerning prison inmates," the release of which would

enable inmates "to alter their activities[,] thus hindering the effectiveness of this technique").

30.   CBP has a clear law enforcement mandate.  See 6 U.S.C. § 111(b).  See also Coastal

Delivery Corp. v. U.S. Customs Serv., 272 F.Supp.2d 958 (C.D.Cal. 2003).  The rational nexus

CBP has between enforcement of a federal law and the information withheld pertains to the

seizure and forfeiture of property for violation of reporting requirements under 31 U.S.C. §§

5317, 5313, and 5324.

31.   The information redacted pertains to the identification of particular incidents and offices

involved with the present matter and descriptions by seizing agents of the circumstances

surrounding particular incidents.  This information consists of alpha-numeric case codes, project

codes, information systems that were checked, search/examination techniques and narrative

information which would reveal law enforcement techniques, which are typically located at the

center of he SEACAT screen prints under the headings "Circumstances/Remarks", "Seizure

Data" and/or "Summary Data".  This information shows, in part, the law enforcement techniques

involved in developing seizure cases and disclosure of these techniques would render future law

enforcement efforts ineffective.

## V.     Segregability

32.   Under the FOIA, "any reasonably segregable portion of a record shall be provided to any

person requesting such record after deletion of the portions, which are exempt."

5 U.S.C. § 552(b).  All information not exempted from disclosure pursuant to the FOIA

exemptions specified above was correctly segregated and non-exempt portions promptly

released.  Each document partially released was reviewed to determine if there were any portions

of the document that could be released.  Information withheld as indicated in the attached

Vaughn Index was individually determined to be exempt from release; however, the segragable portions were released to the Plaintiff.

I declare under penalty of perjury, that the matters and facts set forth in this Declaration fall within my official purview and, based upon my personal knowledge, information, and belief, are correct and true.

Executed this _____30ᵗʰ_____ day of April, 2008.


Shari Suzuki, Chief
FOIA Appeal, Policy, and Litigation Branch
Regulation and Disclosure Law Division
Office of International Trade; Regulations and Rulings
U.S. Customs and Border Protection
Washington, D.C. 20229

ATTACHMENT A

<u>Vaughn Index</u>

DOCUMENTS RELEASED IN PART

| Document | Location & Other Document Identifiers | Document Description | # of pages | Disposition & Exemption(s) |
|---|---|---|---|---|
| 1 | FP&F File maintained by the CBP FP&F Office in Atlanta, Georgia | Custody Receipt for Seized Property and Evidence (CBP Form 6051S) – A CBP form that documents receipt of seized property and records the chain of custody. | 1 | Exemption (b)(2) – Investigative Case No. (file control number) redacted because it constitutes an internal matters of a relatively trivial nature not of any genuine public interest.<br><br>Exemptions (b)(6) and (b)(7)(C) – Names and signatures of individual CBP Officers accounting for receipt of seized property redacted to protect these individuals from comments, speculation, and unnecessary harassment with respect to the FP&F proceedings, based on privacy considerations – such information does not shed light on how CBP performs its statutory duties nor there is any public interest in the disclosure of such information. |
| 2 | FP&F File maintained by the CBP FP&F Office in Atlanta, Georgia | Collection Receipt or Informal Entry (CBP Form 368) – A CBP form that documents receipt of property. | 1 | Exemptions (b)(6) and (b)(7)(C) – Name and signature of CBP Officer accounting for receipt of seized property redacted to protect this individual from comments, speculation, and unnecessary harassment with respect to the FP&F proceedings, based on privacy considerations – such information does not shed light on how CBP performs its statutory duties nor there is any public interest in the disclosure of such information. |

1


CARMELS 800-783-8399

GOVERNMENT
EXHIBIT

| Document | Location & Other Document Identifiers | Document Description | # of pages | Disposition & Exemption(s) |
|---|---|---|---|---|
| 3 | FP&F File maintained by the CBP FP&F Office in Atlanta, Georgia | Disposition Order (CBP Form 7605) - CBP form that provides disposition instructions and record of disposition. | 1 | Exemption (b)(2) – Administrative filing instructions for employees to use when filing these records redacted because they constitute internal matters of a relatively trivial nature not of any genuine public interest.<br><br>Exemptions (b)(6) and (b)(7)(C) – Names and signatures of individual CBP Officers accounting for disposition of seized property redacted to protect this individual from comments, speculation, and unnecessary harassment with respect to the FP&F proceedings, based on privacy considerations – such information does not shed light on how CBP performs its statutory duties nor there is any public interest in the disclosure of such information. |
| 4 | FP&F File maintained by the CBP FP&F Office in Atlanta, Georgia | Cashier's Check # 712300336 drawn on the United Commercial Bank in California - copy of obverse (front) side of check | 1 | Exemptions (b)(6) and (b)(7)(C) - Signatures of third-party Bank Officials authorizing disbursement of seized funds to CBP to protect these individuals from comments, speculation, and unnecessary harassment with respect to the FP&F proceedings, based on privacy considerations – such information does not shed light on how CBP performs its statutory duties nor there is any public interest in the disclosure of such information. |

2

| Document | Location & Other Document Identifiers | Document Description | # of pages | Disposition & Exemption(s) |
|---|---|---|---|---|
| 5 | FP&F File maintained by the CBP FP&F Office in Atlanta, Georgia | Currency/ Monetary Instrument Seizure Inventory Form (CBP Form 4605) - CBP Form that is filled out to account for seized funds. | 1 | Exemption (b)(2) – File control number redacted because it constitutes an internal matter of a relatively trivial nature not of any genuine public interest and identification of location and office where seizure information originated was redacted because disclosure would reveal the scope of the investigation and create a risk of circumvention.<br><br>Exemptions (b)(6) and (b)(7)(C) – Name of third party involved with seizure case redacted to protect this individual from comments, speculation, and unnecessary harassment with respect to the FP&F proceedings, based on privacy considerations – such information does not shed light on how CBP performs its statutory duties nor there is any public interest in the disclosure of such information. |
| 6 | FP&F File maintained by the CBP FP&F Office in Atlanta, Georgia | Certified-Return Receipt Requested Letter addressed to Plaintiff, File No. ENF-4-AT:F:LK<br>-Dated October 16, 2007<br>-Signed by FP&F Officer | 3 | Exemptions (b)(6) and (b)(7)(C) – Signature and name of CBP FP&F Officer involved with seizure case redacted to protect this individual from comments, speculation, and unnecessary harassment with respect to the FP&F proceedings, based on privacy considerations – such information does not shed light on how CBP performs its statutory duties nor there is any public interest in the disclosure of such information. |

| Document | Location & Other Document Identifiers | Document Description | # of pages | Disposition & Exemption(s) |
|---|---|---|---|---|
| 8 | FP&F File maintained by the CBP FP&F Office in Atlanta, Georgia | SEACATS screen-prints in Case No. 2008170400001101 | 5 | Exemption (b)(2) – Terminal identification numbers, computer function codes, project code, file control numbers and recordkeeping instructions redacted because they constitute internal matters of a relatively trivial nature not of any genuine public interest and identification of location where seizure information originated was redacted because disclosure would risk circumvention of a legal requirement.<br><br>Exemptions (b)(6) and (b)(7)(C) – Names of CBP Officer and third parties involved with seizure case redacted to protect these individuals from comments, speculation, and unnecessary harassment with respect to the FP&F proceedings, based on privacy considerations – such information does not shed light on how CBP performs its statutory duties nor there is any public interest in the disclosure of such information.<br><br>Exemption (b)(7)(E) – Project codes, information systems checked, certain examination/search methods, and remarks concerning circumstances of seizure redacted because release would disclose scope of investigation and techniques/procedures for law enforcement investigations. |

**DOCUMENTS RELEASED IN FULL**

| Document | Location & Other Document Identifiers | Document Description | # of pages | Disposition & Exemption(s) |
|---|---|---|---|---|
| 1 | FP&F File maintained by the CBP FP&F Office in Atlanta, Georgia | "Election of Proceedings CAFRA Form AF Publish" form - Signed by Plaintiff and dated November 15, 2007; machine date-stamped by CBP November 16, 2007 -Requests that case be sent for court action | 1 | n/a |
| 2 | FP&F File maintained by the CBP FP&F Office in Atlanta, Georgia | "U.S. Customs and Border Protection Seized Asset Claim Form" -Signed by Plaintiff and dated November 15, 2007 | 1 | n/a |
| 3 | FP&F File maintained by the CBP FP&F Office in Atlanta, Georgia | Certified Mail Receipt and Domestic Return Receipt - Certified Mail Receipt post-marked October 17, 2007 - Domestic Return Receipt date-stamped by CBP October 22, 2007 | 1 | n/a |
| 4 | FP&F File maintained by the CBP FP&F Office in Atlanta, Georgia | Envelope of letter from Plaintiff to CBP sent Certified Mail - November 15, 2007 post mark | 1 | n/a |
| 5 | FP&F File maintained by the CBP FP&F Office in Atlanta, Georgia | Envelope of letter from CBP FPF Office in Atlanta to FOIA Division in Washington, D.C. December 5, 2007 post marks | 1 | n/a |
| 6 | FP&F File maintained by the CBP FP&F Office in Atlanta, Georgia | Letter from M. Rafiq Edhi -Signed by Plaintiff and dated November 19, 2007 -States that Plaintiff had changed his mind and was requesting that his matter be considered administratively | 1 | n/a (released by ACC) |

| Document | Location & Other Document Identifiers | Document Description | # of pages | Disposition & Exemption(s) |
|---|---|---|---|---|
| 7 | FP&F File maintained by the CBP FP&F Office in Atlanta, Georgia | Election of Proceedings CAFRA Form AF Publish Form Notice<br>-Signed by Plaintiff and dated November 19, 2007<br>-Requests delay of forfeiture proceedings and administrative consideration of petition/offer | 1 | n/a (released by ACC) |

6

# PETER S. HERRICK, P.A.
## ATTORNEYS AT LAW

**MAIL TO:**
3520 Crystal View Court
Miami, Florida 33133
Tel. 305-858-2332
Fax. 305-858-6347
Of Counsel: Roy Leon

301 East Ocean Blvd.
Suite 530
Long Beach, CA 90802
Tel. 562-628-2355
Email: pherrick@bellsouth.net
Web: CustomsLawyer.Net

November 29, 2007

## FREEDOM OF INFORMATION ACT REQUEST

## MAIL & TELECOPY (404-675-1318)

Fines, Penalties and Forfeitures Office
U.S. Customs & Border Protection
4341 International Parkway, Suite 600
Atlanta, GA 30354

Re:  **FOIA REQUEST**
      Petitioner/Requestor:       Edhi Muhammad
      Customs Case No.:            2008-1704-000011-01
      My File No.:                 788.00

Dear Sir/Madam:

This Law Firm represents Edhi Muhammed in the above referenced Customs case. Enclosed are copies of the executed Appointment and Authorization of Attorney and FOIA Declaration Form. This is a request for records, including electronic records filed pursuant to the Freedom of Information Act, 5 U.S.C. 552, *et. seq.* Requestor agrees in advance to pay for any reasonable search and copy charges.

We request all information relied upon by Customs for the seizure in the referenced case, including but not limited to bulletins, manuals, warrants, and instructions relied upon by Customs. We request copies of any documents, photographs, copies and/or seizure reports prepared and/or taken during the Customs investigations in the referenced case. We request copies of any records and/or documents that pertain to the requestor and any potential

1

GOVERNMENT
EXHIBIT
B

on-going investigations pertaining to the requestor. We request copies of any custody reports, custody receipts, seizure notices, warrants, banking reports, banking documents and/or any notices of publication regarding the requestor's seized currency.

The agency must expeditiously process this request for records pursuant to 5 U.S.C. §552(a)(6)(E)(v)(II). The requestor certifies compelling need for the records upon knowledge and belief based on the ongoing seizure case. Please forward all records to the Miami Office located at 3520 Crystal View Court, Miami, FL 33133. Thank you for your prompt attention in this case.

Sincerely,

Peter S. Herrick

Enclosures

cc:    Edhi Muhammad

2

## APPOINTMENT AND AUTHORIZATION OF ATTORNEY

To:    U S Customs & Border Protection

Re:    Edhi Muhammad
       Customs Case No. 2008-1704-000011-01

Peter S. Herrick, P.A. is hereby appointed, and authorized to act, as attorney at law for the undersigned with respect to the referenced case pending with the United States Customs & Border Protection.

Said attorney is authorized, and a limited power of attorney is granted to said attorney, to execute any documents required regarding our matters, on behalf of the undersigned. This may include but is not limited to Freedom of Information Act Request, filing a summons, filing a notice of third party refunds, filing petitions, filing demands for immediate release, receiving ACH refunds, etc.

A duplicate, photocopy, telefax copy or photocopy of a telefax copy of the signed original shall have the same validity, force and effect as the original.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___28th___ day of _November_, 2007.

                                        _Edhi Muhammad_ (signature)
                                        Edhi Muhammad

4

DECLARATION

I    Edhi Muhammad
_____
(print full name)

request access to records maintained by the United States Customs
Service, maintained in the port of _____ which pertain to me

My present address is 783 BAUGH SPRING LN LAWRENCEVILLE
GA 30044

My last former address is _____

(necessary only if you have resided at your present address less
than 5 years).

My date of birth is     20 – 01 – 53

I understand that knowingly or willfully seeking or obtaining
access to records about another person under false pretenses is
punishable by a fine up to $5,000.    I understand that any
applicable copying fees must be paid by me before any records will
be released.

I request that any records located and made available be sent to:

Name of Individual:    Peter S. Herrick, P.A.
Address:               3520 Crystal View Court
                       Miami, Fl. 33133
                       Tel.- 305-858-2332 / Fax. 305-858-6347
(IF EXECUTED OUTSIDE OF THE UNITED STATES)
I declare (or certify, verify, or state) under penalty of perjury
under the laws of the United States of America that the foregoing
is true and correct.

                          Executed on  11/28/2007
                                          (date)

                          _____
                          Signature of Declarant

(IF EXECUTED IN THE UNITED STATES, ITS TERRITORIES, POSSESSIONS OR
COMMONWEALTHS)
I declare (or certify, verify, or state) under penalty of perjury
that the foregoing is true and correct.

                          Executed on  11/28/2007
                                          (date)

                          _____
                          Signature of Declarant

4341 International Parkway, Suite 600
Atlanta, GA 30354

 **U.S. Customs and
Border Protection**

DATE:  December 5, 2007

FILE:  DIS-2:FO:SA:ATL:PD  LK

Peter S. Herrick, P.A.
Attorney At Law
3520 Crystal View Court
Miami, Florida 33133

Dear Mr. Herrick:

This is in reference to your Freedom of Information/Privacy Act request dated
November 29, 2007, pertaining to Edhi Muhammad and the seizure of U.S. currency
by U.S. Customs and Border Protection.

Pursuant to current FOIA policy, all new FOIA requests will be processed by our
centralized FOIA office.  Therefore, on November 2, 2007, your request was
forwarded to U.S. Customs and Border Protection, 1300 Pennsylvania Ave., NW, Mint
Annex Building, FOIA Division, Washington, D.C. 20229.

Your request for an extension of time to file a petition for seizure case
20081704000011-01 has been granted for a period of 30 days from the date of this
letter.

Sincerely,

Lorene Knight
FOIA Processor

GOVERNMENT
EXHIBIT
C



U.S. Department of Homeland Security
Washington, DC 20229

**U.S. Customs and
Border Protection**

DIS-2-OT: FD NM
2008F1946

January 25, 2008

Mr. Peter Herrick
3520 Crystal View Court
Miami, FL 33133

Dear Mr. Herrrick:

This is in acknowledgement and response to your Freedom of Information/ Privacy Act (FOIA) request made on behalf of Edhi Muhammad regarding seizure case file number 2008-1704-000011-01.

A search of the U.S. Customs and Border Protection (CBP) database has produced eighteen pages responsive to your request. Certain portions of the enclosed documents are exempt from disclosure pursuant to 5 USC 552 (b)(2), as they are administrative markings and are related solely to the internal administrative practices of this agency, (b)(6), (b)(7)(c), they are names of individuals the disclosure of which could reasonably be expected to constitute an unwarranted invasion of personal privacy and (b)(7)(e), which would disclose techniques and procedures of law enforcement investigations.

You may appeal the deletions on the enclosed documents to the Office of Regulations and Rulings, U.S. Customs and Border Protection, 1300 Pennsylvania Avenue NW, Mint Annex 5th Floor, Washington, D.C. 20229. Your appeal must be made in writing within 35 days after the date of this notification. Both the front of the envelope and the appeal letter should contain the notation "Freedom of Information Act Appeal." Please notate file number 2008F1946 on any future correspondence to CBP related to this request. In addition it is important to understand that there is no central office in the federal government which processes FOIA requests for all federal agencies. CBP cannot remove, amend or release document which fall under the authority of another agency.

Sincerely,

Mark Hanson

Mark Hanson
Acting Director, FOIA Division
Office of International Trade

Enclosures

GOVERNMENT
EXHIBIT
D

2/02/08

## PETER S. HERRICK, P.A.
### ATTORNEYS AT LAW

**MAIL TO:**
3520 Crystal View Court
Miami, Florida 33133
Tel. 305-858-2332
Fax. 305-858-6347
Of Counsel: Roy Leon

301 East Ocean Blvd.
Suite 530
Long Beach, CA 90802
Tel. 562-628-2355
Email: pherrick@bellsouth.net
Web: CustomsLawyer.Net

February 4, 2008

# FREEDOM OF INFORMATION ACT

### TELECOPY ONLY (202-572-8727)

Disclosure Law Branch
Office of Regulations and Rulings
U.S. Customs and Border Protection
1300 Pennsylvania Avenue, NW
Washington, DC 20229

Re:     FREEDOM OF INFORMATION ACT APPEAL
       Requestor:            Edhi Muhammad
       Customs Case No.:    2008-1704-000011-01
       My File No.:        788.00

Dear Sir/Madam:

    This is an appeal filed under the Freedom of Information Act, 5 U.S.C. §552, *et. seq.* on behalf of my client, the requester, Edhi Muhammad. This appeal is timely filed within the 35-day time period of the Office of International Trade's decision letter dated January 25, 2008. Enclosed is a copy of the referenced decision letter.

    Requestor's cashier's check/currency was seized at the Port of Atlanta for alleged "structuring violations." We requested all information relied upon by Customs in regards to the seizure. Enclosed is copy of the original FOIA request dated November 29, 2007.

1



Customs responded in its January 25, 2008 decision letter, by producing eighteen pages with redactions. Customs has refused to release any information pertaining to the alleged "structuring violations" in this case. The alleged "structuring" information and/or records are the most crucial aspect for both sides, and without this information the requestor is unable to prepare a proper petition.

Customs has not construed this FOIA request liberally based on its decision to confine the release of all requested information under broad exemptions and refusing to release other relevant information with no legal justification. The above mentioned exemptions do not apply to release of "all" of the requested records because Customs must pursue other existing records systems it may have in order to facilitate the release of the requested information. Nation Magazine v. United States Customs Service, 71 F.3d 884, 889-90 (D.C. Cir. 1995).

It is hard to imagine that all of the documents relied upon by Customs for the seizure of requestor's cashier's check/currency regarding the alleged "structuring violation" are exempt, do not exist, and/or that certain redactions could not have been made in order to facilitate our request. In Trans-Pacific Policing Agreement, et. al. v. United States Customs Service, 177 F. 3d 1022 (USAppDC 1999) the court stated at page 1026:

> "FOIA specifically requires that, if requested records contains information that is exempt from disclosure under one of the FOIA exemptions, 'any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt.' 5 U.S.C. §552(b); see Oglesby v. United States Dep't of the Army, 316 U.S. App. D.C. 372, 79 F.3d 1172 (D.C. Cir. 1996) ('If a document contains exempt information, the agency must still release 'any reasonably segregable portion' after deletion of the nondisclosable portions.'(quoting 5 U.S.C. §552(b)). 'It has long been a
>          *              *              *
> rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions.' Mead Data Cent., Inc. v. United States Dep't of the Air Force, 184 U.S. App. D.C. 350, 566 F.2d 242, 260 (D.C. Cir. 1977).
>
> In Board of Trade v. Commodity Futures Trading Comm'n, 200 U.S. App. D.C. 339, 627 F.2d 392, 401 (D.C. Cir. 1980), this court described the appropriate procedure for segregating exempt material from non-exempt material . . ."

Customs regulations specifically provides for the release of segregable portions of information after deletion of the nondisclosable portions. We request these records be made available within the time prescribed by law.

2

Sincerely,

Peter S. Herrick

Enclosures

cc:    Edhi Muhammad

3



0U.S. Department of Homeland
Security Washington, DC 20229

U.S. Customs and
Border Protection

MAR X 4 2008

DIS-3 OT:RR:RDL:FAPL
H022848 GRV

Mr. Peter S. Herrick, Esq.
3520 Crystal View Court
Miami, Florida 33133

Dear Mr. Herrick:

This is in response to your letter to U.S. Customs and Border Protection (CBP) dated
February 4, 2008 appealing, on behalf of your client Mr. Muhammad Edhi, a January
25, 2008 decision by the Acting Director, FOIA Division, Office of International Trade,
(CBP), that denied, in part, your Freedom of Information Act (FOIA) (5 U.S.C. 552)
request of November 29, 2007 for all information relied upon by CBP concerning
seizure case file number 2008-1704-000011-01. It is noted that you requested
expedited treatment of your initial request, but failed to establish any "compelling need",
as required by the FOIA. Since you do not appeal this aspect of the Acting Director's
decision, it is not addressed.

The Acting Director disclosed 18 pages of CBP information[1] (Disclosed Documents),
seven (7) pages were disclosed in full and eleven (11) pages were disclosed with
portions containing redactions pursuant to FOIA exemptions (b)(2), (b)(6), (b)(7)(C)
and/or (E) (5 U.S.C. §§ 552(b)(2), (b)(6), (b)(7)(C), and (E)). FOIA Exemption (b)(2)
pertains to agency information used for predominantly internal purposes and
encompasses two categories of information; FOIA Exemption (b)(6) pertains to
personnel and medical files and similar files the disclosure of which would constitute a
clearly unwarranted invasion of personal privacy; and the FOIA Exemptions at (b)(7), in

---

[1] The 18 pages consisted of a Custody Receipt for Seized Property and Evidence (CBP Form 6051S,
commonly referred to as a 'Chain of Custody' form) (1 pg), a Collection Receipt or Informal Entry (CBP
Form 368) (1 pg), a Disposition Order (CBP Form 7605) (1 pg), a copy of the obverse-side of the seized
check (Cashier's Check # 712300336 drawn on the United Commercial Bank in California) (1 pg), a
Currency/Monetary Instrument Seizure Inventory Form (CBP Form 4605) (1 pg), an Election of
Proceedings Form Notice (1 pg), a CBP Seized Asset Claim Form (1 pg), a Certified-Return Receipt
Requested letter to your client dated October 16, 2007 (3 pgs), copies of the obverse-sides of several
Certified mailings in October, November and December of 2007 (3 pgs), and Seized Asset and Case
Tracking System (SEACATS) screen-prints (5 pgs).



GOVERNMENT
EXHIBIT

G

- 2 -

general, exempts from mandatory disclosure records that are compiled for law enforcement purposes in six specific circumstances: the (7)(C) category pertains to information that could reasonably be expected to constitute an unwarranted invasion of personal privacy; and, the (7)(E) category pertains to information would disclose techniques, guidelines, and/or procedures for law enforcement investigations or prosecutions.

You appeal CBP's initial response stating directly that **Customs** has not construed your FOIA request liberally based on its decision to confine the release of all requested information under broad exemptions and refusing to release other relevant information with no legal justification. You then state alternatively that the above mentioned exemptions (not identified) do not apply to release of "all" of the requested records because **Customs** must pursue other existing records systems it may have in order to facilitate the release of the requested information. In your appeal letter, you also make reference to an alleged "structuring violation" and state that it is hard to imagine that all of the documents relied upon by **Customs** for the seizure of requestor's cashier's check/currency regarding the alleged "structuring violation" are exempt, do not exist, and/or that certain redactions could not have been made in order to facilitate our request. (The parenthetical comment and all emphases to **Customs** supplied.) In conclusion, you request that the information previously withheld be made available. It is noted that no showing of any genuine public interest in this FOIA request/appeal has been advanced.

For the reasons that follow, we **affirm** the decision of the Acting Director; CBP's search for responsive records was adequate and the application of FOIA Exemptions (b)(2), (6), and (7)(C) and (E) to the Disclosed Documents was proper; the segregable portions of the records were disclosed to you. It is noted, however, that several other records were in the seizure case file in this matter that are not CBP records. Accordingly, pursuant to 6 CFR 5.4(c)(2), this Office has referred those records to the appropriate agency within the Department of Homeland Security for a direct response to your initial record access request.

The CBP records responsive to your client's FOIA request consist of eighteen (18) pages of documents. Five (5) pages are screen prints of records that are contained in the SEACATS (Seized Asset and Case Tracking System) module of the Treasury Enforcement Communications System (TECS). TECS records constitute a CBP system of investigatory files, which contain data on violators and possible violators of laws enforced by CBP. *See* 66 Fed.Reg. 52984 (October 18, 2001), at 53029. SEACATS information pertains to tracking forfeited or seized property, penalties, and liquidated damages from case initiation to final resolution. Id., at 53023. The other 13 pages of records disclosed are copies of paper records contained in the physical seizure case file

- 3 -

in this matter. While no blanket exemption for withholding certain information is applicable in all cases, certain FOIA Exemptions may be applicable to information contained in the records requested. See, Nation Magazine v. U.S. Customs Serv., 71 F.3d 885, 891 (D.C.Cir. 1995).

The FOIA "was enacted to facilitate public access to Government documents." U.S. Dep't of State v. Ray, 502 U.S. 164, 173 (1991). However, "Congress realized that legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused." FBI v. Abramson, 456 U.S. 615, 621 (1982). Thus, the provisions of the FOIA reflect Congress' hope "to reach a workable balance between the right of the public to know and the need of the Government to keep information in confidence to the extent necessary without permitting indiscriminate secrecy." John Doe Agency v. John Doe Corporation, 493 U.S. 146, 152 (1989). In the Ray decision, supra, the Supreme Court stated that the FOIA was designed to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny. Consistent with this purpose, as well as the plain language of the Act, the strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents. That burden remains with the agency when it seeks to justify the redaction of identifying information in a particular document as well as when it seeks to withhold an entire document (quotation marks and citations omitted).

However, even if exemptions are applicable, an agency must still disclose the reasonably segregable portion(s) of documents. The segregability requirement limits claims of exemption to discrete units of information; to withhold an entire document, all units of information in that document must fall within a statutory exemption. See, Trans-Pacific Policing Agreement v. U.S. Customs Serv., 177 F.3d 1022, 1027 (D.C.Cir. 1999). If, however, an agency determines that nonexempt material is so "inextricably intertwined" that disclosure of it would "leave only essentially meaningless words and phrases," the entire record may be withheld. Mead Data Cent., Inc. v. U.S. Dep't of the Air Force, 566 F.2d 242, 261 (D.C.Cir. 1977).

## Exemption (b)(2)

Exemption (b)(2) (5 U.S.C. § 552(b)(2)) exempts from mandatory disclosure records, or portions thereof, that are related solely to the internal personnel rules and practices of an agency. This exemption encompasses two distinct categories of information:

    (1)    internal matters of a relatively trivial nature not of any "genuine public interest"–often referred to as "low 2" information; and,

- 4 -

(2)   more substantial internal matters, the disclosure of which would risk circumvention of a legal requirement—often referred to as "high 2" information.

See, Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C.Cir. 1992)(describing "low 2" and "high 2" aspects of this exemption).

To withhold information under Exemption (b)(2), this jurisdiction requires an agency to satisfy two requirements. First, it must show that such materials are "used for predominantly internal purposes." This includes a showing that the information is not agency "secret law" (i.e., internal "instructions to agency personnel ... on how to regulate members of the public."). Am. Lawyer Media, Inc. v. SEC,, 2002 U.S.Dist. LEXIS 16940 (D.D.C. 2002), citing Crooker v. ATF, 670 F.2d 1051, 1075 (D.C.Cir. 1981)(en banc); Schwaner v. Dep't of Air Force, 898 F.2d 793, 794 (D.C.Cir. 1990).

Once an agency establishes that the material is "predominantly internal," and not "secret law," the second requirement is a showing that disclosure would either "risk circumvention of agency regulation" ("high 2 information") or that "the material relates to trivial administrative matters of no genuine public interest" ("low 2 information"). Am. Lawyer Media, Inc. decision, supra, citing Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C.Cir. 1992).

In this matter, both categories of (b)(2) information are present. Regarding the first category of information ("low 2") under this exemption, information withheld must pertain to internal matters of a relatively trivial nature not of any "genuine public interest". Types of information that fall under the "low 2"-category designation include alpha-numeric and narrative information such as administrative markings and notations on agency documents, room numbers, telephone numbers, employee identification numbers, personnel directories containing the names of Federal employees, and record keeping directions, instructions on contacting agency officials for assistance and guidelines on agency decision making. See, Amro v. U.S. Customs Serv., 128 F.Supp.2d 776 (E.D.Pa. 2001). Regarding the second category of information ("high 2") under this exemption, information withheld must pertain to more substantial internal matters, the disclosure of which would risk circumvention of a legal requirement; disclosure would impede law enforcement activities. The concern under "High 2" is that a FOIA disclosure should not "benefit those attempting to violate the law and avoid detection". Crooker decision, supra, at 1054. Types of information that fall under the "high 2"-category designation include quantitative and qualitative information, such as the frequency of inspections at specific locations or the routing of agency information between law enforcement agencies, and narrative information that pertains to the agency's procedures and reports on specific findings pursuant to those procedures,

- 5 -

which can also embrace alpha-numeric and narrative information.  See, Shores v. FBI, 185 F.Supp.2d 77, 84 (D.D.C. 2002); Crooker decision, supra (disclosure of a law enforcement agents' training manual would risk circumvention of the law); and, NYC Apparel FZE v. U.S. Customs and Border Protection, 484 F.Supp.2d 77 (D.D.C. 2007) (agency properly applied exemption (b)(2) —for both "low 2" and "high 2" purposes—to the SEACATS information it withheld).

In this case, eight (8) pages of information (the five (5) SEACATS screen-prints and three (3) Customs Forms) contained (b)(2) information that was redacted.  As the eight (8) pages disclosed show, the information was compiled and intended to be used predominately for internal administrative and law enforcement/investigatory purposes and does not constitute CBP "secret law", as the reasonably-segregable portion of the information disclosed pertains to your client and not the public at large.  Secondly, some of the material redacted is the type of information that assists the agency in the organization of its records and no genuine and/or significant public interest in this information is apparent nor asserted by you; it does not pertain to your client.  The information redacted pertains to trivial administrative matters of no genuine public interest ("low 2" information), consisting of alpha-numeric Case File numbers and agency routing information that assists the agency in the organization of its records, which is typically located at the top and bottom of the Customs Forms and the SEACAT screen prints.  We find that you and the public have no genuine and significant interest in this agency administrative marking information.  Accordingly, the information on each of the eight (8) pages disclosed that was redacted under the "low 2"-category provisions of Exemption (b)(2) was properly withheld from your client.

Of these eight (8) pages redacted under the provisions of (b)(2), three (3) pages contain internal information of a more substantial nature, which pertains to law enforcement procedures and identifies the means by which this information was compiled and disseminated.  The disclosure of this information would significantly risk the circumvention of agency statutes or regulations, thus, impeding CBP's law enforcement activities in the administration of forfeited or seized properties.  Shores decision, supra, citing Crooker decision, supra, at 1074 (disclosure of a law enforcement agents' training manual would risk circumvention of the law).  The information redacted pertains to the identification of particular incidents and CBP Offices involved with the present matter and descriptions by seizing agents of the circumstances surrounding particular incidents.  This information (high 2" information) consists of alpha-numeric Case Codes and narrative information, which is typically located at the center the SEACAT screen prints under the headings "Circumstances/Remarks", "Seizure Data" and/or "Summary Data".  We find that this type of internal, law enforcement information is exempt from mandatory disclosure.  Suzhou Yuanda Enter. v. U.S. Customs & Border Prot., 404 F.Supp. 2d 9, 12 (D.D.C. 2005) (internal instructions on handling seized property); and,

- 6 -

Delta Ltd. v. U.S. Customs & Border Prot. Bureau, 384 F. Supp. 2d 138, 147-48 (D.D.C.) (same), partial reconsideration granted on other grounds, 393 F. Supp. 2d 15 (D.D.C. 2005). Accordingly, the information on each of the three (3) pages disclosed that was redacted under the "high 2"-category provisions of Exemption (b)(2) was properly withheld from your client.

Exemption (b)(6)

Exemption (b)(6) (5 U.S.C. § 552(b)(6)) exempts from mandatory disclosure records, or portions thereof, that contain information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Like FOIA Exemption (b)(2), this exemption also requires a balancing of the public's right to know and whether disclosure of the records at issue would constitute a clearly unwarranted invasion of a person's privacy. Personal privacy interests are protected by two provisions: Exemptions 6 and 7(C) (discussed below). The two exemptions differ in the "magnitude of the public interest that is required," not in the "identification of the relevant public interest" (citations omitted).

To warrant protection under Exemption 6, information must first meet its threshold requirement: it must fall within the category of "personnel and medical files and similar files". U.S. Dep't of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749 (1989). In U.S. Dep't of State v. Washington Post, 456 U.S. 595, at 602 (1982), the Supreme Court made it clear that all information that "applies to a particular individual" meets the threshold requirement for Exemption 6 protection. Thus, while mere lists of some Federal agency's employees may be disclosable, when specific employees are married-up with other identifying information that reveals personnel information the protection of Exemption 6 is applicable. Meeting the threshold requirement, the issue becomes whether disclosure of the information at issue "would constitute a clearly unwarranted invasion of personal privacy." Dep't of the Air Force v. Rose, 425 U.S. 352 (1976). This requires a balancing of the public's right to disclosure against the individual's right to privacy.

In this matter, the information redacted on the four (4) Customs Forms, the Cashier's Check, the Election of Proceedings form (at the second page only)—all at the signature line or box, and the one (1) SEACATS screen print (Privacy Documents) identifies particular, third-party individuals; the information does not identify your client. Thus, the threshold requirement for this exemption is met. And since no showing of any public interest in this information has been argued by you, the third-party personal information is deemed excludable. Accordingly, the personal identifying information contained on

- 7 -

each of the documents identified above that was redacted under the provisions of Exemption (b)(6) was properly withheld from your client.

**Exemption (b)(7), in general**

Exemption (b)(7) (5 U.S.C. § 552(b)(7)) protects from disclosure records or information, or portions thereof, compiled for law enforcement purposes, but only to the extent that such production meets any one of six specified conditions or enumerated harms. John Doe decision, supra. Of the six enumerated results specified in the FOIA sections b(7)(C), and (E) are the only categories of exempt information relevant to this appeal, as the material redacted from the documents disclosed contains information that could reasonably be expected to constitute an unwarranted invasion of personal privacy (5 U.S.C. 552(b)(7)(C)), or would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law (5 U.S.C. 552(b)(7)(E).

To withhold information under Exemption (b)(7) in general, this jurisdiction requires an agency to satisfy two requirements: (1) whether the agency's investigatory activities that give rise to the documents sought are related to the enforcement of federal laws or to the maintenance of national security; and (2) whether the nexus between the activity and one of the agency's law enforcement duties is based on information sufficient to support at least a colorable claim of rationality. Keys v. U.S. Dept. of Justice, 830 F.2d 337 (D.C.Cir. 1987); Pratt v. Webster, 673 F.2d 408 (D.C.Cir. 1982). The "law" to be enforced within the meaning of the term "law enforcement purposes" includes both civil and criminal statutes. Cappabianca v. Comm'r, U.S. Customs Serv., 847 F.Supp. 1558, 1565 (M.D.Fla. 1994) (the records of internal investigation focusing specifically on alleged acts that could result in civil or criminal sanctions were compiled for law enforcement purposes).

In this case, it is axiomatic that SEACATS records are compiled for law enforcement purposes and are directly related to CBP's law enforcement responsibilities, as this recognized system-of-records was created to provide Customs and the Treasury Executive Office of Asset Forfeiture with a comprehensive system for tracking seized and forfeited property, penalties, and liquidated damages from case initiation to final resolution. See, 66 Fed.Reg., supra.

- 8 -

Exemption (b)(7)(C)

Exemption 7(C) provides protection for personal information in law enforcement
records, exempting information which could reasonably be expected to constitute an
unwarranted invasion of personal privacy. SEACATS-record information routinely
contains third-party names and other personal identifying information, such as
telephone numbers. See, SafeCard Services v. SEC, 926 F.2d 1197 (D.C.Cir. 1991)
(the categorical withholding of information that identifies 3rd parties in law enforcement
records will ordinarily be appropriate under (b)(7)(C)); Cappabianca decision, supra
(witnesses, investigators, and other subjects of investigation have "substantial privacy
interests"); Hamilton v. Weise, 1997 U.S. Dist. LEXIS 18900 (M.D.Fla. 1997) (protecting
third-party names to avoid harassment, embarrassment, and unwanted public attention;
and Amro decision, supra, at 784 (pursuant to exemption (b)(7)(C), Customs withheld
the name of a clerical worker who retrieved the record from the TECS database, the
names of Custom Inspectors, officers of other federal agencies, local law enforcement
officers and the names of third parties of investigatory interest to Customs, as well as
the name of the holder of the TECS record; individuals' privacy interests outweighed
any public interest in their identities).

In this matter, as discussed above under the Exemption (b)(6), the Privacy Documents
identify particular, third-party individuals; the information does not identify your client.
Thus, as discussed above under Exemption (b)(6), because the information redacted
identifies particular, third-party law enforcement individuals, the threshold requirement
for this exemption is met. And since no showing of any public interest in this information
has been argued by you, the third-party personal information is deemed excludable.
Accordingly, the personal identifying information contained on each of the documents
identified above that was redacted under the provisions of Exemption (b)(7)(C) was
properly withheld from your client.

Exemption (b)(7)(E)

Exemption (b)(7)(E) exempts from disclosure information that would disclose techniques
and procedures for law enforcement investigations or prosecutions, or would disclose
guidelines for law enforcement investigations or prosecutions if such disclosure could
reasonably be expected to risk circumvention of the law. See, Fisher v. U.S. Dep't of
Justice, 772 F.Supp. 7 (D.D.C. 1991)(explicitly recognizing categorical protection for law
enforcement techniques and procedures), aff'd, 968 F.2d 92 (1992); and, Hammes v.
U.S. Customs Serv., 1994 WL 693717 (S.D.N.Y. 1994) (protecting criteria used to
determine which passengers to stop and examine). Exemption (b)(7)(E) is essentially a
codification of the "high 2" exemption. Schwarz v. U.S. Dep't of Treasury, 131
F.Supp.2d 142 (D.D.C. 2000). Thus, where the agency has a clear law enforcement

- 9 -

mandate it only need establish a rational nexus between enforcement of a federal law and the information withheld based on a (b)(7) exemption). See, Coastal Delivery Corp. v. U.S. Customs Serv., 272 F.Supp.2d 958, 963 (C.D.Cal. 2003) (Exemptions (b)(2) & (7)(E) case that allowed withholding of techniques or guidelines for law enforcement investigations); Pons v. U.S. Customs Serv., 1998 U.S.Dist. LEXIS 6084 (D.D.C. 1998) (protecting cooperative arrangements between Customs and other law enforcement agencies to keep them effective; and, Judicial Watch, Inc. v. FBI, 2001 U.S.Dist. LEXIS 25732 (D.D.C. 2001) (protecting the "identities of two types of [FBI] records concerning prison inmates," the release of which would enable inmates "to alter their activities[,] thus hindering the effectiveness of this technique").

In this matter, it is evident that the records and information contained in the SEACATS module were compiled for law enforcement purposes--as discussed above--and that a nexus between CBP's activity (seizure and forfeiture of property complicit in illicit financial transactions) and one of the agency's law enforcement duties (enforcement of monetary reporting requirements; 18 U.S..C. 981 and 31 U.S.C. 5313 and 5324) is based on information sufficient to support at least a colorable claim of rationality. See, Fisher decision, supra (explicitly recognizing categorical protection for law enforcement techniques and procedures); Coastal Delivery Corp. decision, supra, at 963 (a (b)(2) & (b)(7)(E) case concerning techniques or guidelines for law enforcement investigations); and Shores decision, supra, at 84 (Exemption (b)(7)(E) invoked to withhold numerical ratings which assessed the effectiveness of investigative techniques used during investigations).

If you believe that this disposition of your administrative appeal does not adequately respond to your request, your client may pursue judicial review of this agency appeal decision pursuant to 5 U.S.C. 552(a)(4)(B) in the U.S. District Court in the district in which you reside or have a principle place of business, or in which the agency records are situated (in this matter, the agency records are located in Washington, DC) or in the U.S. District Court for the District of Columbia.

Sincerely,

Shari Suzuki, Chief
FOIA Appeals, Policy & Litigation Branch
Office of International Trade
Regulations and Rulings

# PETER S. HERRICK, P.A.
## ATTORNEYS AT LAW

**MAIL TO:**
3520 Crystal View Court
Miami, Florida 33133
Tel. 305-858-2332
Fax. 305-858-6347
Of Counsel: Roy Leon

301 East Ocean Blvd.
Suite 530
Long Beach, CA 90802
Tel. 562-628-2355
Email: pherrick@bellsouth.net
Web: CustomsLawyer.Net

March 6, 2008

**FREEDOM OF INFORMATION ACT**

**TELECOPY ONLY (202-572-8727)**

Disclosure Law Branch
Office of Regulations and Rulings
U.S. Customs and Border Protection
1300 Pennsylvania Avenue, NW
Washington, DC 20229

Attn:  Greg Vilders

Re:  FREEDOM OF INFORMATION ACT APPEAL - SUPPLEMENT
     Requestor:          Edhi Muhammad
     Customs Case No.:    2008-1704-000011-01
     Customs FOIA File No.:  H022848
     My File No.:        788.00

Dear Mr. Vilders:

     This is a supplement to the requestor's appeal filed under the Freedom of Information Act, 5 U.S.C. §552, *et. seq* dated February 4, 2007. We have recently received the enclosed three pages from the Customs Associate Chief Counsel's Office in Atlanta regarding the referenced Customs case.

1



GOVERNMENT
EXHIBIT
H

Why wasn't the referenced three pages provided with those records provided with the January 25, 2008 decision letter? Therefore, the requestor requests all records that are being withheld by the Customs and were not disclosed with the January 25, 2008 decision letter. Also, the requestor requests an explanation as to why records are being withheld with no legal justification.

In addition the time for responding to the appeal has expired. We are preparing to file a FOIA complaint in this matter. Should this matter proceed to litigation, we will request a written finding from the Court to take action pursuant to 19 CFR section 103.9 ( c ).

Sincerely,

Peter S. Herrick

Enclosures

cc:   Edhi Muhammad

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **EDHI MUHAMMAD,**            ) | |
|            ) | |
|        **Plaintiff,**      ) | **Civil Action No.: 08-457 (ESH)** |
|            ) | |
| **v.**            ) | |
|            ) | |
| **U.S. CUSTOMS & BORDER PROTECTION,**   ) | |
|            ) | |
|            ) | |
|        **Defendant.**      ) | |
|            ) | |
|            ) | |

## PROPOSED] ORDER

This matter having come before the Court on defendant's motion for summary judgment, plaintiff's opposition to the motion, if any, and defendant's reply in further support of its motion, if any, it is hereby

**ORDERED** that defendant's motion for summary judgment is hereby **GRANTED.**  And it is further

**ORDERED** that judgment is hereby entered in favor of the defendant.

**SO ORDERED** on this _____ day of _____, 200_____.

_____
ELLEN SEGAL HUVELLE
UNITED STATES DISTRICT JUDGE