UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EDHI MUHAMMAD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 08-0457 (ESH) |
| ) | |
| U.S. CUSTOMS & BORDER PROTECTION, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION

Plaintiff filed this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, against United States Customs & Border Protection ("CBP") to obtain information related to the seizure of $58,738.80 from plaintiff's bank account. Defendant has moved for summary judgment. For the reasons set forth below, the Court will grant defendant's motion.

This case arises from the government's commencement of civil forfeiture proceedings against plaintiff and his attempts to obtain information regarding the basis for those proceedings. By letter dated October 16, 2007, defendant advised plaintiff that it had seized $58,738.80 from his bank account because the account had been involved in, or was traceable to the structuring of cash transactions to evade currency reporting requirements in violation of 31 U.S.C. § 5324. (Compl. ¶ 5; Declaration of Peter S. Herrick, counsel for plaintiff ["Herrick Decl."] ¶¶ 3-4 (attached to Pl.'s Opp'n).) On November 29, 2007, plaintiff, through counsel, filed a FOIA request with CBP for copies of the records relied upon to support the seizure. (Compl. ¶ 6;

Declaration of Shari Suzuki ["Suzuki Decl."] Ex. B at 1-2 (attached to Mot. for Summ. J.).)[1] On January 25, 2008, CBP's FOIA Division both acknowledged plaintiff's request and released 18 pages of information with redactions. (Compl. ¶ 9; Suzuki Decl. Ex. D.) CBP's FOIA Appeals, Policy and Litigation Branch affirmed the FOIA Division's initial decision by letter dated March 4, 2008. (Suzuki Decl. Ex. G at 2.) In the same letter, plaintiff was informed that several other records contained in the seizure case file were not CBP records and that those other records had been referred to another agency within the Department of Homeland Security ("DHS") for a direct response to plaintiff's FOIA request. (*Id.*) In fact, 12 pages were referred to United States Immigration and Customs Enforcement ("ICE"), another component agency within DHS. (*Id.* ¶ 12.)

On or about March 5, 2008, CBP's Office of the Associate Chief Counsel ("ACC") forwarded to plaintiff's counsel two pages of responsive documents that had not previously been disclosed to plaintiff.[2] (*See* Compl. ¶ 12; Herrick Decl. ¶¶ 18-19.) Defendant asserts that its failure to disclose the two pages was due to "an administrative oversight/error" that occurred when the administrative assistant who copied documents from the seizure case file for forwarding to the FOIA Division copied only plaintiff's initial Election of Proceedings CAFRA Form, thinking that the second such form was a duplicate rather than an election change.[3]

---

[1] Ms. Suzuki is Chief of the FOIA Appeals, Policy and Litigation Branch, Regulations and Disclosure Law Division, Office of Regulations and Rulings, Office of International Trade, United States Customs & Border Protection, U.S. Department of Homeland Security. (Suzuki Decl. ¶ 1.)

[2] The ACC forwarded three pages total, but one of the pages had been released in full as part of the FOIA Division's initial January 2008 response. (Suzuki Decl. ¶ 14.)

[3] This form gives claimants the choice to proceed with a challenge to the seizure either administratively or by court action.

(Suzuki Decl. ¶¶ 14, 16 and Ex. A at 5-6.)  In light of this error, CBP conducted a page-by-page comparison of the documents contained in the seizure case file and the documents forwarded to the FOIA Division, but no other responsive documents were identified.  (*Id.* ¶ 16.)  Plaintiff's counsel received a response from ICE on May 7, 2008.[4]

## DISCUSSION

As an initial matter, it should be noted that there is no dispute that plaintiff has received copies of all records to which he is entitled under FOIA, and there is no issue as to the validity of defendant's application of various FOIA exemptions to withhold certain information.  (*See* Opp'n at 2.)  Rather, plaintiff contends that defendant failed to conduct a proper search for records and improperly withheld the two pages that were released by the ACC and the documents that were produced by ICE.[5]  (*Id.* at 3-4.)  With respect to the two pages released by the ACC, plaintiff disputes defendant's assertion of "an administrative oversight/error," claiming, without support, that defendant's failure to produce these records constituted "gross negligence."  (*Id.* at 3.)

---

[4] Counsel received a copy of the ICE response after requesting it from defendant's counsel. (Herrick Decl. ¶ 24.)  The response was dated March 20, 2008, and was addressed to plaintiff's counsel's Long Beach, California address.  (*Id.*)  Although counsel listed a Miami address and a Long Beach address on plaintiff's FOIA request, the request directed that all records be forwarded to counsel's Miami office.  (*Id.*; *see* Suzuki Decl. Ex. B.)  While plaintiff's counsel contends that his office staff person has no recollection of having received the response, he does not assert that it was not actually mailed. (*See* Herrick Decl. ¶ 24.)

[5] Plaintiff contends that the delay in the release of these documents prejudiced him.  The government filed a forfeiture complaint against plaintiff's seized assets on March 28, 2008.  *See United States v. $58,738.00 Seized from United Commercial Bank Account X-7585*, Civil Action No. 08-1245 (N.D. Ga. filed Mar. 28, 2008).  Had the documents been included in the FOIA Division's initial response in January 2008, plaintiff alleges that he could have zealously pursued his administrative remedies rather than being forced to participate in a time consuming and expensive judicial forfeiture proceeding.  (Opp'n at 2.)

These claims, however, are beyond the scope of this Court's jurisdiction. Under FOIA, the Court has jurisdiction "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). However, once the Court determines that the agency has, "however belatedly, released all nonexempt material, [it has] no further judicial function to perform under the FOIA." *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982). Therefore, given the fact that all responsive records have been released to plaintiff, his FOIA claim is now moot. *Crooker v. U.S. State Dep't*, 628 F.2d 9, 10 (D.C. Cir. 1980) ("Once the records are produced the substance of the controversy disappears and becomes moot since the disclosure which the suit seeks has already been made.")

Moreover, even if plaintiff could argue - - which he cannot - - that his FOIA claim was not moot, defendant would be entitled to summary judgment because its search efforts were reasonable. An agency that claims that it has fully discharged its FOIA disclosure obligations is entitled to summary judgment if it shows, viewing the facts in the light most favorable to the requester, that there is no genuine issue of material fact. *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994). To meet this burden, "the agency must demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents." *Id.* (quoting *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (internal quotation marks omitted)).

> [T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*. The adequacy of the search, in turn, is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case. In demonstrating the adequacy of the search, the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith.

*Weisberg*, 745 F.2d at 1485 (internal citations omitted).

The Court is satisfied from the declaration describing the breadth and manner of the search that CBP conducted an adequate search, which was reasonably calculated to locate responsive records. Moreover, plaintiff cannot identify records that should have been searched nor can he claim that he did not receive all requested documents, rather he complains only about defendant's tardy production. In these circumstances, plaintiff has failed to raise a genuine issue of material fact regarding the adequacy of the search.

Furthermore, the fact that the agency initially failed to disclose two pages from the Atlanta field office's case file due to human error does not render the search inadequate or suggest bad faith on the agency's part. As the D.C. Circuit has stated,

> the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search. . . . After all, particular documents may have been accidentally lost or destroyed, or a reasonable and thorough search may have missed them.

*Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (citations omitted). "It would be unreasonable to expect even the most exhaustive search to uncover *every* responsive file; what is expected of a law-abiding agency is that it admit and correct error when error is revealed." *Meeropol v. Meese*, 790 F.2d 942, 953 (D.C. Cir. 1986).

Most importantly, even though the release of some of the documents was delayed, plaintiff has no remedy under FOIA. Plaintiff requests that the Court "make findings of improper actions by responsible Customs officers or employees as provided by 5 U.S.C. § 552(a)(4)(F) and 19 C.F.R. § 103.9(c)."[6] (Opp'n at 4.) Section 552(a)(4)(F) directs the Merit Systems Protection Board's Special Counsel to initiate an investigation to determine whether disciplinary action is warranted in response to the improper withholding of nonexempt records

---

[6] 19 C.F.R. § 103.9(c) is the CBP regulation implementing 5 U.S.C. § 552(a)(4)(F).

under FOIA by an agency officer or employee.  The statute, however, directs such an investigation only when a court (1) orders the production of the withheld records and assesses reasonable attorney's fees and costs against the United States and (2) issues a written finding that the "circumstances surrounding the withholding raise questions whether agency personnel acted arbitrarily or capriciously with respect to the withholding."  § 552(a)(4)(F)(i).  Since none of these events has occurred here, plaintiff cannot seek relief for defendant's dilatory production.[7]

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment will be granted.  A separate order accompanies this Memorandum Opinion.

                                                                /s/
                                        ELLEN SEGAL HUVELLE
                                        United States District Judge

Date: June 13, 2008

---

[7] Plaintiff also requests that the Court "make a finding that consolidating FOIA requests at Customs' Headquarters when documents are located at a Customs field office is contrary to 19 C.F.R. § 103.5(d)(2) and is a violation of the notice and comment procedures required by the Administrative Procedure Act."  (Opp'n at 4-5.)  Section 103.5(d)(2) requires that requests for records maintained in a CBP field office be directed to "the director of the service port, or if the records concern the Office of Investigations, the special agent in charge, where the field office is located."  Consistent with this rule, plaintiff filed his FOIA request with the Fines, Penalties and Forfeiture Office in Atlanta.  Nothing prevented CBP from thereafter forwarding the request to a centralized office for processing and response.  Thus, CBP did not violate the rule.

Moreover, plaintiff has commenced this action pursuant to FOIA.  Thus, plaintiff's APA claim, having been raised for the first time in his opposition, is not properly before the Court.  *See DSMC, Inc. v. Convera Corp.*, 479 F. Supp. 2d 68, 84 (D.D.C. 2007) (rejecting plaintiff's attempts to broaden claims and thereby amend its complaint in opposition to defendant's motion for summary judgment); *Sharp v. Rosa Mexicano, D.C., LLC*, 496 F. Supp. 2d 93, 97 n.3 (D.D.C. 2000) ("[P]laintiff may not, through summary judgment briefs, raise the new claims … because plaintiff did not raise them in his complaint, and did not file an amended complaint.").